## Lakes et al. v. Lakes' Executors.

(Decided March 12, 1937.)

G. MURRAY SMITH for appellants.

H. O. PORTER for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

Robert Lakes died testate a resident citizen of Madison county, Ky., in November, 1934. He named three of his sons, Algin Lakes, Boyd M. Lakes, and Teddy Lakes, as executors of his estate, and directed that no bond be required of them. He empowered his executors to make all deeds, sales, and transfers of property necessary to carry out the provisions of his will.

That part of the original will involved in this appeal reads as follows:

"1. I direct that all my just debts be paid.

"2. I have this day executed deeds conveying to my children Algin and Teddy Lakes, Emma Lakes Hensley, Radie Lakes, Boyd W. Lakes, Rollie B. Lakes, Gertrude Lakes and Walter B. Lakes, such part of my landed estate as I wish them to have, and stipulating the condition under which they are to receive said lands. Also, reserving for my wife, Lurinda Lakes, should she survive me, a life interest in the land conveyed to Algin and Teddy Lakes, I direct that the children named in this paragraph accept and consider the land deeded to them as the principal portion of their share in my estate.

"3. I direct that all other real estate owned by me at the time of my death, and not covered by the deeds mentioned in the preceding paragraph, all cattle, livestock, notes, bonds, stocks and other personal property, be sold or otherwise converted into cash as soon after my death as is prudent so to do, and the proceeds divided as follows:

"To my son Lilburn B. Lakes, $9,000.00.

"To my daughter Sallie Lakes Bucey, the sum of $9,000.00.

"To my son, Elgie Lakes the sum of $9,000.00.

"Any sum realized from the proceeds of the

sale of the property mentioned in this paragraph in excess of $27,000.00 specifically disposed of above to be divided equally between all of my children, provided, however, that if any of my children predeceased me, and leave no direct descendants, then that share [or shares] shall also be divided equally among the remaining children. * * *'' The will was dated June 4, 1932.

In June, 1934, testator wrote the following codicil to his will:

"I, Robert Lakes, of Berea, Ro #1, County of Madison and State of Kentucky, do hereby make, publish and declare this codicil to my last Will and Testament dated the fourth day of June, 1932.

"Since making the aforesaid will, I have acquired other property, also the real estate that I deeded and willed to my children has depreciated in value and to more evenly equalize the disposition of my property I hereby substitute the following to be deemed and taken as if originally inserted in said will.

"Item I of Codicil: I wish that all of my real estate that I have deeded to my children, the deed to be effective at my death, to be given to said children as provided in said deeds, subject to all of the conditions and restrictions therein.

"Item II of Codicil: I have provided in my will that my son, Lilburn B. Lakes, my daughter, Sallie Lakes Bucey and my son, Elgie Lakes, each receive in cash out of my estate nine thousand Dollars [$9,000.00]. I desire that said children still receive the aforesaid sum of $27,000.00, be paid out of the notes, mortgages, stocks, and bonds that I have and that all of my personal property be first sold by my executors to pay my debts and then the proceeds derived therefrom be applied on this $27,-000.00 legacy to my aforesaid three children. I do not desire that any of the real estate that I have given to my other children be sold to satisfy the aforesaid legacy until after the expiration of at least four years after my death.

"Item III. I have acquired since writing my will, two farms in Madsion County Kentucky,

known as the Judge John D. Goodloe farm and the Price Tudor farm, the Goodloe land is near Whites Station adjoining the land of Harry Morgan and the Price Tudor farm is on Lancaster Pike adjoining the land of Sam Park Wagers. It is my will that both of these farms be given jointly to Walter Lakes, Gertrude Lakes, Algin Lakes, Boyd W. Lakes, Rada Lakes and Teddy Lakes.

"If any of my real estate that I have given to my children must be sold to pay or finish paying the $27,000.00 cash legacy herein, I desire that the Price Tudor farm and the John D. Goodloe farm be sold first.

"I hereby ratify and confirm my said will and the deeds, to my property in all other respects. It is my desire to distribute my property among my children as fairly as possible. In my deed to Boyd W. Lakes, I provide that he pay two thousand to go to make up the cash legacy to my three children. Since land has depreciated I desire to reduce that $2,000.00 to One Thousand Dollars and it is my will that he pay that amount."

The executors converted the personal property into cash and out of the proceeds thereof they paid to the plaintiffs Lilburn Lakes, Sallie L. Bucey, and Elgie Lakes a certain portion of their legacies, leaving a certain balance unpaid until the sale of the farms mentioned in the codicil, which under the terms of the will cannot be sold until November, 1938, four years after the death of the testator.

In September, 1936, the appellants, as plaintiffs below, brought this action in the Madison circuit court to recover the balance of their respective legacies. In paragraph 1 of the petition they alleged that the executors, defendants below, had paid them the sum of $7,064.40 each, leaving a balance due each of them in the sum of $1,935.60, and prayed that each of them recover that sum with interest at the rate of 6 per cent. from November 24, 1935, that being one year from the date of the death of the testator.

In paragraph 2 plaintiffs alleged that the defendant executors have purported to make a partial settlement of the estate, in which they seek to charge the

plaintiffs the sum of $24.73, as the amount due by each of them as federal estate tax due by the estate of the testator; that no part of such tax is due or owing by the plaintiffs and is not chargeable to them.

In paragraph 3 they alleged that the settlement purported to charge the plaintiffs with the sum of $311 as their portion of the costs, administration, and attorneys' fees, and that this sum should not be charged to them.

They further pleaded in paragraph 4 that the defendants' purported partial settlement sought to charge the plaintiffs with executors' commission of $1,139.40 and that this sum is not chargeable against them under the will of the testator.

They prayed for a judgment of the court and a declaration of their rights under the will of the testator, and that they be given a judgment against the defendants as executors of the will in the sum of $1,935.60 each, with interest from November 24, 1935; that the court adjudge that they be not chargeable with any part of the federal estate tax due by the estate of the testator, nor any part of the costs of administration or the attorneys' fees, nor with any executors' commission and for all orders and judgments pertaining to their declaration of rights under the will of the testator, for costs and all proper relief.

Defendants filed a demurrer to the petition and without waiving same they filed their answer, denying certain allegations of the petition, but admitted that in the partial settlement of the estate they charged the plaintiffs with the sums set out in the petition, but denied that the plaintiffs were not chargeable with same. They further pleaded that they had paid the sum of $120 state inheritance tax for the plaintiffs, and they should be charged with that sum. Defendants affirmatively pleaded that the estate of the testator was appraised at the sum of $60,861.17; that under the will the plaintiffs receive 44 per cent. of the estate; and that they should pay 44 per cent. of the costs of the settlement of the estate, including attorneys' fees, commission, federal estate tax, and that the sums charged to plaintiffs in the partial settlement were on the basis of 44 per cent. of the sums expended for those purposes. They further pleaded that at the time of the making of

the partial settlement they had converted into cash all the property left by the testator except the real estate specifically devised and that there is no other property out of which they, as executors, can realize any money except out of the sale of the Goodloe farm and the Price Tudor farm and under the terms of the will they cannot sell and dispose of these farms until after November, 1938—four years after the death of the testator— and averred that no interest is chargeable on the unpaid balance of plaintiffs' legacies until after the sale of the farms.

A demurrer was filed to the answer and the court considered it together with the demurrer theretofore filed by defendants to the petition and the court sustained each demurrer in part and overruled each in part.

No further pleadings were filed and the case was submitted on the record as we have indicated and the court entered the following judgment:

"That there is a balance due the plaintiffs, Lilburn Lakes, Sallie Lakes Bucey and Elgie Lakes, by the defendants executors of the estate of Robert Lakes under the will of Robert Lakes and each of them the sum of $1,935.60 subject to a credit of $40.00 each for inheritance taxes paid by said executors for the plaintiffs and each of them, to which the defendants object and except and pray an appeal to the Court of Appeals.

"That the plaintiffs and each of them are entitled to said sums with interest at the rate of 6% from November, 1938, that being four years from the date of the death of Robert Lakes, and not from one year from the date of the death of Robert Lakes. * * *

"It is further ordered and adjudged by the Court that under the pleadings and exhibits in this case that the plaintiffs Lilburn Lakes, Sallie Lakes Bucey and Elgie Lakes are not entitled to be charged with any part of the estate tax due by the estate of Robert Lakes, nor with any part of the attorneys fees or court costs incurred by said executors not to be charged with any executor's commission on the sums devised to them under the will

of Robert Lakes, nor with any sum for burial expense of Robert Lakes. * * *''

It was further adjudged that the defendants pay the costs of the action.

The plaintiffs have prosecuted their appeal from that part of the judgment refusing to allow them interest on the balance of their legacies from November, 1935, and defendants have cross-appealed from that part of the judgment refusing to charge the plaintiffs with any part of the federal estate tax due by the estate of the testator or with any part of the attorney's fees, court costs, executors' commission, or burial expenses.

In the prayer of the petition plaintiffs ask for a declaration of their rights, but it appears from the allegations of the petition that its purpose is to obtain judgment against the executors for the balance of the face of plaintiff's legacies free of any costs or charges attempting to be charged to them in the partial settlement.

The only issue made by the answer is whether the plaintiffs should be charged with the items of costs, commisison, taxes, attorneys' fees, etc., set out in the pleadings. From the nature of the pleadings and the issues, it appears to us that the suit is to surcharge the partial settlement made by the executors and it should be so treated. It follows that the only question before us on this appeal is the correctness of the chancellor's judgment (a) whether plaintiffs are entitled to interest on the unpaid balance of their respective legacies from November, 1935, one year after the death of the testator, or whether the interest should be deferred until a sale of the proprty is had for that purpose as provided in the codicil of the will; and (b) whether plaintiffs should in the end receive their legacies in full or whether there should be deducted therefrom the items mentioned in the pleadings.

(a) It is insisted for plaintiffs that under section 2065, Kentucky Statutes, they are entitled to interest on the unpaid balance of their legacies from November, 1935, one year after the death of the testator. The Statute, supra, reads:

"If no time is fixed for the payment of a specific pecuniary legacy, it shall be payable one year after the testator's death, and carry interest after due.''

It is argued that the will of the testator does not indicate a different intention and that the exception provided in the Statute, supra, is not here applicable. The codicil of the will provides that if the personal property is insufficient to pay plaintiffs' legacies, certain real estate shall be sold for that purpose, but no sale of any real estate shall be had until four years after the death of the testator. It follows that so much of the plaintiffs' legacies as will have to be paid out of the proceeds of the sale of the real estate is not due until such real estate is sold at the time fixed in the will and such balance will not draw interest until it is due. We think the chancellor correctly adjudged that so much of plaintiffs' legacies that will have to be paid out of the proceeds of the sale of real estate should not draw interest until the time fixed in the will for the sale of the real estate.

(b) It is insisted for defendants on their cross-appeal that to relieve the plaintiffs of all costs of administration, federal estate tax, etc., would in effect be to treat these items as a debt of the testator, and that the costs of administration of an estate is not a debt in the meaning of a will which provides for payment of the debts of the testator; that the word "debts" as used in wills means debts created by the testator, not by others after the death of the testator. No Kentucky cases are cited in briefs of counsel on this question, and we know of none, but counsel cites Page on Wills (2d Ed.) Vol. 2, page 2164; 40 Cyc. 2061; 69 C. J. p. 1218, sec. 2559; Moore v. Kernachan, 133 Va. 206, 112 S. E. 632. These authorities, supra, tend to support the defendants' contention in respect of the meaning of the word "debt," used in wills as indicated above. But that is not the determinative question in this case. As in the construction of all wills, the intention of the testator must be ascertained, and that involves a consideration of the original will, the codicil, the nature of the estate, and all the surrounding circumstances.

It will be noticed that item 3 of the will directed that all real estate owned by the testator at the time of his death not covered by the deeds mentioned in the preceding paragraph and all personal property be sold or otherwise converted into cash and the proceeds applied to the payment of plaintiffs' legacies, and the excess be divided equally between all of his children. This

clearly indicates that the testator considered that his personal property and the undisposed of real estate would be more than sufficient to pay plaintiffs' legacies and in that event they would have shared equally with the other children in the surplus. But after he wrote the original will, he bought other real estate known as the Goodloe farm and the Price Tudor farm mentioned in item 3 of the codicil, and paid the purchase price therefor out of the personal property, which otherwise would have been available to pay plaintiffs' legacies, and devised these farms to six of his children named in that item of the codicil, with the proviso that if any of the real estate that he had given to his children be sold to pay or finish paying plaintiffs' legacies, that the Price Tudor farm and the Goodloe farm be sold first.

In item 2 of the codicil, the testator reaffirmed his desire that the plaintiffs still receive the $27,000 legacies provided in the original will, to be paid out of the personal property, if sufficient, and, if not, the balance to be paid out of the proceeds of the sale of the real estate, but not until four years after his death.

It will be seen that if the testator had not converted a certain portion of his personal property into real estate after writing the original will, plaintiffs would have received their legacies in full or a larger portion thereof than they have received, without waiting until 1938, for part of it, in the event of a deficit, and six of the other children were devised the two farms purchased with the personal property, which would have been available for the payment of plaintiffs' legacies under the provisions of the original will. In the codicil of the will, testator expressed his desire to equalize the disposition of his property among his children. He also mentioned the fact that since writing the original will the real estate that he had deeded to his children had depreciated in value, and it is apparent that the codicil of the will was written for the purpose of taking care of the depreciation in value of the real estate and to more equalize the disposition of his property. The circumstances and facts indicate that testator thought that the cash legacies devised to the plaintiffs ($9,000 each) was of more value than the real estate deeded to the other children, respectively, and for that reason he used a portion of his personal property to purchase other real estate and devised it to the other

children (by the codicil) subject, however, to the payment of any deficit of plaintiffs' legacies which might exist after the personal property was exhausted, but the plaintiffs should wait four years after his death before they receive such deficit. This clearly indicates that it was the testator's intention to devise to the plaintiffs $9,000 cash each, and that the other children take the real estate, which under the codicil of the will he considered of more value than $27,000 cash legacy to the plaintiffs, but that this difference be adjusted by the payment of all costs of the administration by the real estate devisees and vendees.

It is insisted for defendants on their cross-appeal that plaintiffs have received 44 per cent. of the entire estate, according to the value fixed by the appraisers, and for that reason to relieve the plaintiffs of their proportionate share of the costs, etc., would result in the defeat of the testator's expresed intention to equalize the division of his estate. But we do not know what value the testator placed on the real estate devised and deeded to the defendants. It may be that he considered the real estate of sufficient value to equalize them with the cash legacies bequeathed to the plaintiffs. We are not authorized to take issue with the testator in respect of values and fix them according to our own notion.

A federal estate tax is a tax against testator's estate and should be paid by the executors out of the assets of the estate, but no part of it is chargeable to the plaintiffs. However, it is proper that the plaintiffs pay their own state inheritance tax, which it is alleged, was $40 each. If the executors paid this tax or should hereafter pay it, it is proper that that item be deducted from the plaintiffs' legacies, and with this exception they will receive the face of their legacies.

As we have already stated, the theory or basis of the settlement, or the rights of the parties in that respect, is the only question before us, and the question of the amounts of costs, including commission, attorneys' fees, etc., is a matter to be adjusted in the settlement of the estate.

Wherefore, the judgment is affirmed on both the original and cross-appeals.

Whole court sitting.