Hillsborough, }
June 21, 1938. }

AMOSKEAG TRUST COMPANY & a.

*v.*

TRUSTEES OF DARTMOUTH COLLEGE & a.

*Warren, Wilson, McLaughlin & Wiggin* (*Mr. Wiggin* orally), for the specific legatees.

*McLane, Davis & Carleton* (*Mr. Carleton* orally), for the residuary legatee.

WOODBURY, J. The question presented is one of local law (*Williams* v. *State*, 81 N. H. 341, 355; *Edwards* v. *Slocum*, 264 U. S. 61, 63), and the authorities in this state are unanimous to the effect that the federal estate tax, unless the will otherwise directs, "is to be paid out of the estate and charged *pro rata* to each beneficiary." *Fuller* v. *Gale*, 78 N. H. 544, 546; *Williams* v. *State, supra; Foster* v. *Farrand*, 81 N. H. 448, 450.

Counsel for the specific legatees admit that these authorities are in point but suggest that we re-examine and overrule them for the reason that they are based upon inadequate and erroneous reasoning and are contrary to the overwhelming weight of authority elsewhere.

The federal estate tax, (39 U. S. Stat. 756), was passed by Congress in September 1916, and less than two years later this court in *Fuller* v. *Gale, supra,* was called upon for the first time to consider the question here presented. In its opinion in that case the court did not indulge in any extended reasoning. It merely distinguished the federal estate tax from foreign inheritance taxes and announced its rule of *pro rata* distribution of the burden of the former among all the beneficiaries.

Six years later in *Williams* v. *State*, 81 N. H. 341, 354, 355, the nature of the tax as one upon the "interest which ceased by reason of the death," rather than as one "upon succession and receipt of benefits under the law or the will" was mentioned, but the result of the *Fuller* case was affirmed by interpreting the silence of the testator on the subject of the incidence of this tax to indicate an intention upon his part that its burden should be borne as though

he had died intestate, that is, that it "should be prorated among the recipients of the testator's bounty." The case of *Foster* v. *Farrand*, 81 N. H. 448, decided six months after the *Williams* case, merely refers to the question as settled by the earlier decisions of the court.

The cases from other jurisdictions, in so far as they have been cited to us by counsel or have come to our attention, do not proceed upon a theory of interpretation of the testator's intention from his silence; in fact in one of them this theory is expressly repudiated. *Plunkett* v. *Company*, 233 Mass. 471, 475. Instead they approach the problem from the standpoint of the nature of the tax, and the conclusion which they reach as to the incidence of its burden is contrary to that reached by the court of this state.

The leading case among the authorities in this latter group is *Young Men's Christian Association* v. *Davis*, 264 U. S. 47. In relation to the federal estate tax the Supreme Court of the United States in that case said: "What was being imposed here was an excise upon the transfer of an estate upon the death of the owner. It was not a tax upon succession and receipt of benefits under the law or the will. It was death duties as distinguished from a legacy or succession tax. What this law taxes is not the interest to which the legatees and devisees succeeded upon death, but the interest which ceased by reason of the death." In view of the binding effect upon the state courts of this interpretation of the federal tax, (*Gehlen* v. *Patterson*, 83 N. H. 328, 330, and cases cited), and in view of the fact that this tax is payable by the executor out of the assets of the estate before distribution, the courts elsewhere have held that it constitutes a charge against the estate which, like other such charges and expenses of administration, is payable out of the residue. *Plunkett* v. *Company*, 233 Mass. 471; *Corbin* v. *Townshend*, 92 Conn. 501, 505; *Matter of Hamlin*, 226 N. Y. 407; *Matter of Oakes*, 248 N. Y. 280; *People* v. *Company*, 289 Ill. 475; *Hepburn* v. *Winthrop*, 83 Fed. (2d.) 566; *Brown* v. *Hodge*, 198 Ia. 373.

We do not believe that the reasoning of these latter cases can be successfully assailed. On the other hand, the theory upon which this court has proceded in the past is open to serious criticism. In the first place the inference of intestacy as to the payment of this tax which was drawn from the testator's silence in the *Williams* case is opposed to the presumption against partial intestacy (*Clyde* v. *Lake*, 78 N. H. 322; *Kennard* v. *Kennard*, 63 N. H. 303), and in the second place it fails to take into account the statement in *Kingsbury* v. *Bazeley*, 75 N. H. 13, 17, to the effect that "In a gift of a pecuniary.

legacy of a certain amount, the apparent intention is to benefit the legatee to the full amount named." Furthermore, "The benefaction conferred by the residuary clause of a will is only of that which remains after all paramount claims upon the estate of the testator are satisfied," (*Plunkett* v. *Company, supra*) and, as appears above, the federal estate tax is, by the law which created it, made a "paramount" claim against the estate.

Upon analysis it seems to us that the testator's silence gives no clear indication of his intention in respect to the incidence of the burden of the tax. Considering the will as a whole it seems rather more probable than not that the testator wished his specific legatees to receive the actual amounts which he gave them, less such taxes as might be imposed upon them as recipients of his bounty, (*Kingsbury* v. *Bazeley, supra,* 16), and that he wished his residuary legatee to receive whatever might remain thereafter and after the payment of his debts, the expenses of administration, and of any other charges which the law might impose upon his estate before its transfer. At least, the inference of intention drawn from the silence of the testator in the *Williams* case is not more probable than the contrary inferences mentioned above, and it follows that the testator's silence was ambiguous and his intention speculative. The rule of the *Williams* case and of the others like it in this jurisdiction is therefore without adequate foundation and unsound.

The question remains, however, as to whether we should overrule our earlier decisions or await possible future legislation upon the subject.

The doctrine of *stare decisis* is not one to be either rigidly applied or blindly followed. So used, the doctrine would nullify that basic principle of the common law which permits it to grow and develop to meet new and changing social conditions and would soon render the law inelastic, archaic and useless to serve the needs of a dynamic community. The doctrine of *stare decisis* is a brake upon legal change to be applied in the interest of continuity. It should not be applied so sparingly as to destroy the usefulness of judicial decisions as precedents, but, on the other hand, neither should it be used so freely as in every case to render inviolable those prior decisions of this court which we consider to be erroneous. The doctrine is not a barrier which prevents us from correcting prior judicial errors; it prevents changes only when in our judgment it is better to suffer an error to persist than it is to undergo the hardships which would result from its correction. The question of when the doctrine should

be applied and when not is fundamentally one for the discretion of this court. Balancing the good which may be expected to follow from the judicial change of our former rule against the disadvantages which such conduct on our part may entail, we feel that in the situation presented the doctrine of *stare decisis* should not be applied.

The decisions elsewhere are in agreement upon a rule different from that which heretofore obtained in this jurisdiction and conformity with them has obvious features of desirability. The announcement by this court of a new rule of law governing the question presented is as likely to come to the attention of testators or of counsel as would such a rule when announced by the legislature. In respect to questions of this sort there is no superior virtue in a legislative change over a judicial one on the score of publicity.

Neither is this a situation in which judicial change will operate to destroy or impair established rights. Wills are ambulatory instruments. Testators who have known of and acted upon the former rule may reasonably be supposed to learn of its change and they may govern themselves accordingly because wills do not take effect until the death of the testator. Upon consideration of all the circumstances we deem it more advisable to correct our earlier rule than to perpetuate its error; and consequently the cases of *Fuller* v. *Gale*, *Williams* v. *State*, and *Foster* v. *Farrand* are overruled in so far as they hold that in the absence of testamentary directions the federal estate tax must be charged *pro rata* against all the beneficiaries rather than solely against the residuary legatee.

Expressed testamentary instructions to the executor as to the incidence of the burden of this and other taxes are everywhere regarded as controlling and counsel for the residuary legatee argues that an inference of the testator's intention that this tax be borne *pro rata* by all the legatees may be drawn from the fact that in this case the testator was a member of the bar of this state and that his will was drawn after the above New Hampshire decisions were rendered. There is nothing to indicate that the testator in fact knew of these decisions or acted upon them. All that appears is that he may have known and acted upon the rule which they announced and it would be pure conjecture to say that his silence was motivated by his knowledge thereof. The above argument is akin to that relied upon in *William* v. *State* which we now reject as unsound.

The further argument in behalf of the residuary legatee to the effect that the rule which we now adopt operates in this case to impose a tax upon a charity was fully answered in *Young Men's*

*Christian Association* v. *Davis*, 264 U. S. 47, 51. In that case the residuary legatee was a charity and the Ohio court had held that the federal estate tax was payable out of the residuary estate. The Supreme Court of the United States in that case said: "The donees of the altruistic gifts profit much by the deduction made under subdivision (3) even though they do receive less by the amount of this tax. Had subdivision (3) not been in the statute, the tax would have been much heavier, measured by a higher percentage of the value of the whole estate, including their gifts. It is hardly true to say that, under the judgment of the Ohio courts, these residuary gifts are taxed. The gifts are and were intended by the testator to be, indefinite in amount, and to be what was left after paying funeral expenses, attorneys' fees, executor's compensation, debts of the decedent, and taxes. These donees do not pay the taxes any more than they pay the funeral expenses, the lawyers, the executors and the testator's debts."

The question of the incidence of the burden of the state inheritance tax (P. L. c. 72), was transferred, but it has been neither briefed nor argued and we understand that it has been waived. This state tax is levied upon the interest of the legatee or distributee (*Kingsbury* v. *Bazeley*, 75 N. H. 13, 16), not upon the estate of the decedent. It is a tax of a nature different from the federal estate tax and nothing herein contained is intended to affect in any way the incidence of its burden.

*Case discharged.*

All concurred.