## Trimble et al. v. Hatcher's Ex'rs.

June 25, 1943.

William Hays for appellant Jack Trimble.

A. F. Childers for appellant Joe Trimble.

J. J. Moore for appellee Zack Justice and K. L. Arnold.

J. P. Hobson, Jr., and Henry J. Scott, for other appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

James Hatcher died September 29, 1939; his will was executed October 10, 1938. The matters discussed arose in a suit for declaration of rights and duties of executors and trustees as to allocation of federal estate taxes. Within two years prior to his death Mr. Hatcher conveyed to his great nephews Jack and Joe Trimble the Hatcher Hotel in Pikeville, valued (for tax purposes) at $110,000; to Betty Hatcher the Vanover apartments, $5,000; to four Trimble girls, Locust Court, $35,000; to four Hatcher children, Caney Creek farm, $676. He made cash gifts to the Trimble girls, $4,500 each, a like sum to June Polly, not of kin.

The taxing authorities found all these to have been made in contemplation of death. The total was fixed by taxing authorities at $173,176, and the value of property passing by will, real estate, notes, cash, insurance, etc., at $313,625.33; after exemptions and deductions the net taxable estate was fixed at $412,931.29, upon which the tax was $61,236.60; $14,764.19 has been paid, leaving the unpaid balance $46,055.

Appellees asserting lack of funds to pay the balance asked advice as to whether or not they should collect a proportionate part of the federal estate tax from the beneficiaries of the gifts, admittedly made in contemplation of death. Two other questions are raised: Whether any beneficiary contesting the apportionment of taxes as sought, stands in danger of forfeiting rights to take under the will, and as to the right of trustees to mortgage the trust property for payment of taxes. Testator had written that any devisee or beneficiary who contested the will should take nothing under the trusts. The chancellor correctly held the proceeding to be only

an effort of parties to assist the court in determining the tax burden. South Norwalk Trust Co. v. St. John, 92 Conn. 168, 101 A. 961, 963, Ann.Cas.1918E, 1090; Black v. Herring, 79 Md. 146, 28 A. 1063; Mallet v. Smith, 6 Rich.Eq.,S.C., 12, 60 Am.Dec. 107; In re Estate of Bergland, 180 Cal. 629, 12 P. 277, 5 A.L.R. 1363. The provision authorizing the pledging of property is copied infra. The court construed this item when read with the whole will to authorize representatives to mortgage the trust property for payment of estate taxes chargeable against the property devised by this will. As to power see Gaither v. Gaither, 288 Ky. 145, 155, S.W. (2d) 746.

After the customary declarations, testator provided that the executors "pay all my just debts out of the trust funds coming into their hands." The two trusts were created by item 8 of the will, which after small specific devises and bequests, gave to trustees the residue for the benefit of great nieces and nephews, and one nephew. The will provided:

"I hereby authorize my trustees when necessary to borrow money and to mortgage my trust estate therefor for the sole purpose of paying the United States government, county. and state, including income and inheritance taxes levied or assessed against my said estate, whether such taxes be against my trust estate or other estate left by me by this will."

In a codicil of November 1938, which modified a portion of clause 8, relating to the same subject, testator wrote:

"I hereby authorize, empower and direct that out of the income from the trust property the trustees pay all taxes on all the property which I may own at the time of my death, whether the same be part of this trust estate or not, also to pay all taxes on that property deeded by me to the Trimble and Hatcher children on Ivy and Caney Creeks, alone, when and if there are sufficient funds in my general trust fund with which to make such payment of said taxes. But when and if there is no money available out of my general trust fund for such payment, then I hereby authorize my trustees to make such payment of such taxes for the Ivy and Caney tracts out of the separate trust estate or separate trust funds

held by my trustees for my devisees as set forth on page 15 of my said will. If such payment is made out of my own general trust fund such payment shall be charged against the devisee for whom such payment is made. And if no funds are available out of either of my general trust fund, or out of the separate fund held by my trustees for the devisees, then such payment or any balance on said taxes shall be made by each devisee who owe such taxes.''

The chancellor reserved, as we do, questions as to allocation of tax payments, except federal estate tax. The court concluded it was not testator's intention to provide for payment of estate taxes on the inter vivos transfers. That while the executors were primarily liable for payment they were to have pro rata contribution. He found the total tax to be 13.67 per cent of the taxable estate, and adjudged that each recipient of gifts, and those taking under the trust, should pay their proportionate part, based on the percentages.

Appellees, concerned chiefly for their protection, take the position as do some beneficiaries under the trust, that the judgment is correct, basing their conclusions on Hampton's Adm'rs v. Hampton, 188 Ky. 199, 221 S.W. 496, 10 A.L.R. 515; Martin v. Martin's Adm'r, 283 Ky. 513, 142 S.W. (2d) 164, further insisting that a construction of the will in respect of tax payments leads to the conclusion reached by the chancellor. The gift recipients contend that the will shows the intention of the testator to be that the federal tax should be paid from the trust property, the residuary estate, and if not so, then under the federal law, as construed, the tax must fall as other debts against the estate, payable as such under our laws of descent and distribution.

It is unnecessary to go into great detail in discussing arguments of the diverse claimants as to the meaning of the will with reference to taxes. The one class contends that by the clause of the will first above quoted, the testator meant that all taxes, including estate taxes, should be paid from the trusts. As against this contention it is argued that if it be conceded that the federal taxes should be paid from the trusts, the clause limited payment to taxes levied against ''my trust estate or other estate left by me by this will.''

It is also contended that the codicil, supra, showed an intention on the part of testator to have executors

pay all taxes from the trusts. It may be noted that this portion of the will, if it is susceptible to the construction contended for by appellants, provided for tax payments, not out of trust funds, but out of the "income from the trust property." It also limits payment in this manner of taxes on property which "I may own at the time of my death." The reference to payment of taxes on the gift to the Hatcher and Trimble children (the Caney Creek farm) in connection with the provision for payment of all taxes from "income" clearly evinces the purpose of payment of ad valorem, and not estate taxes, which the testator no doubt knew would have to be paid promptly.

It is also argued, in attempt to show that the intention was that all taxes should be borne by the trust, that testator highly favored those to whom he had made inter vivos gifts, many of whom were beneficiaries of the trusts. In answer to this it is argued that testator showed more concern as to future interests of beneficiaries of the trust. From a reading of the entire will testator was apparently as much concerned in the use and protection of all properties and income coming into the hands of all beneficiaries.

We do not take these arguments to be conclusive as bearing on the question of the ultimate burden, and must agree with the chancellor that the will did not evince an intention that the trust should bear the estate taxes on gifts made in contemplation of death. As to whether the will manifested intention that the trust beneficiaries should bear their proportions need not be discussed since there is no complaint from them, and the application of the law in any event would place proportionate burden upon them.

It is recognized at the outset that the opinions of many courts, and relied upon by gift recipients, hold that in the absence of a state statute or provisions of the will providing allocation otherwise, the ultimate burden of federal estate tax falls and remains where the federal statute, as claimed, places it, upon the estate, or as some of the opinions hold, upon the residue. Among these cases are Y. M. C. A. v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558; Amoskeag Trust Co. v. Trustees of Dartmouth College, 89 N.H. 471, 200 A. 786, 117 A.L.R. 1186; In re Hamlin, 226 N.Y. 407, 124 N.E. 4, 7 A.L.R. 701; Lakes v. Lakes' Ex'rs, 267 Ky. 684, 103 S. W. (2d)

86; Central Trust Co. v. Burrow, 144 Kan. 79, 58 P. (2d), 469, and others cited.

For reasons later noted we need not go into a closer analysis of these cases. However, we cannot refrain from observing that in the recent case of Riggs v. Del Drago, 317 U. S. 95, 63 S. Ct. 109, 87 L. Ed. —, 142 A. L. R. 1131, the Supreme Court apparently dispelled the notion that the federal taxing law should be construed as placing the tax estate on the residue of the estate. The commentator of the Del Drago opinion appropriately suggests that the ruling in Y. M. C. A. v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558, Amoskeag Trust Co. v. Trustees of Dartmouth College, 89 N.H. 471, 200 A. 786, 117 A.L.R. 1186, and other cases cited, is dictum, since the question of final thrust of the taxes was not a matter before the court. In the Del Drago case the question before the court was the constitutionality of a New York statute which provided a spread of the estate taxes proportionately among distributees or beneficiaries as a whole, in the absence of a contrary provision in the will, a most equitable rule, and one exemplified by this Court in opinions which have controlling bearing on the question here presented, to-wit: The Martin and Hampton cases, supra, with which to the extent the Lakes' case holds otherwise, conflict.

In the Hampton case the decedent had died intestate. Under our laws of descent one-half of the personal estate passed to the widow, with dower in the real estate. The estate there consisted of personalty and real estate, which latter was sold prior to distribution. The administrator contended that the federal tax should be borne by the personal property, and the widow not entitled to any portion of such until the tax was paid. The trial court adjudged that the tax, payable before distribution, should be deducted from the entire estate, the widow to pay such part as the value of all the property by law allotted to her bore to the entire estate. In affirming the lower court we said [188 Ky. 199, 221 S.W. 497, 10 A.L.R. 515]:

"In view of the inequality that would result, we are reluctant to adopt the view that the estate tax is a charge on the personal estate, unless compelled to do so by the language of the act itself. * * * We do not regard as controlling the fact that the primary duty of paying the tax is imposed upon the execu-

tor, in view of the fact that the executor may be 'any person who takes possession of any property of the decedent,' and the further consideration that the obligation of the personal representative to pay the tax is a mere rule of administration to insure its payment, and does not in any way affect the rights of the heirs and distributees as among themselves.''

We concluded that the federal law did not intend to discriminate between the widow, heirs and distributees, but that all the taxable estate should bear its pro-. portionate part, subject to the right of a decedent to otherwise provide by will. We held that the estate tax, under our law, could not be regarded as a debt within the meaning of our statute. Martin v. Martin's Adm'r, supra, presented a similar question, whether or not the federal estate tax should be borne equally by the beneficiaries as between themselves, regardless of the character of property received from the estate, or whether the tax should be borne exclusively by the personalty left by the decedent, ''thus discriminating against and reducing the amount which the distributees of the latter class of property (real estate) would receive under our statute of Descent and Distribution.''

Martin had died intestate, the owner of real and personal property upon which the estate tax was around $19,000. The value of the real property greatly exceeded that of the personalty. The trial court held that the tax should be borne equally by those to whom the personal property would go, and those taking the real property, in the proportion of the value thereof received by each. The court pointed out that it was urged to reverse the Hampton case because of its claimed unsoundness. This we refused to do, digesting numerous cases relied upon by appellant, finding them to be cases where the decedent died testate, and wherein the ''inference was drawn by the court dealing with the question that he had the right to direct in his will how the federal burden should be distributed, * * * and not having done so, it would be presumed that he intended for the personalty * * * to bear the burden of the tax * * * which would, as we have said, operate to the detriment of the legatees of the testator, to whom he gave his personal property, and relieve his devisees, to whom he gave his real estate.''

We further said:

"Moreover, a number of those cases do not deal with the question we have here, except insofar as they attempt to define the nature of the federal demand, which those opinions generally conclude is an 'Estate Tax' collectible by the federal government from every class of property of the decedent whether in the hands of the immediate takers or transferees for a period of ten years after the death of decedent; but with the proviso that—for the convenience of administration—the personal representative * * * must pay the exacted amount to the federal government and which it was possibly contemplated would be paid out of the personalty if there was enough of it before any distribution * * *."

We cited Bingham's Adm'r v. Com., 196 Ky. 318, 244 S.W. 781, finding that while disputed question arose in a different manner, the court had approved the doctrine in the Hampton case. We closed by saying:

"We conclude that in the absence of specific direction to the contrary justice requires that all classes of beneficiaries participating in the net value of the estate left after the [payment of] federal tax is satisfied and deducted should, as between themselves, bear their just proportion of it."

Counsel for appellees rely on Lakes v. Lakes' Ex'rs, 267 Ky. 684, 103 S.E. (2d) 86. This case, like others we have observed (save perhaps the Burrow case), does not involve the precise question here. Mr. Lakes died testate; on the day he wrote his will he executed deeds to several of his children, they to be effective upon his death. To three others he devised $9,000 each, the residue to be divided among all the children. The executors paid in part the three cash bequests. Payment of the balance had been delayed and the three who had been bequeathed cash filed suit for the balance, asking also for declaration as to whether or not they should be charged with any part of the federal estate tax. The lower court held that none of the three should be so charged, and the executor cross appealed from that portion of the judgment.

While the opinion does not show the fact, we have examined the record and find that the children to whom

testator had conveyed real estate, were not parties to the suit, or if so did not raise the question as to payment of estate taxes on gifts, undoubtedly of testamentary character. The Lakes' will made no mention of taxes, though he directed payment of his debts. There was certain language in testator's will, as we found, to indicate that it was his desire to have the three beneficiaries receive the exact amounts of cash bequeathed. By thus concluding the effect was to place the burden of federal estate taxes on the residue of the estate, hence there was no necessity for the holding that the estate tax is a tax against the estate, not to be charged against those who received cash bequests.

There may arise many cases, as seems to be the case here, where the personal representative is without funds to pay the heavy estate taxes upon the estate created by the revenue law. The inclusion in such gross tax estate of the value of property passing under power of appointment, or gifts in contemplation of death, would frequently create that situation. The personal representative who has paid, or is to pay the tax out of the trust estate, should have the right of subrogation to the position of the sovereign which has received its tax, and to collect from those against whom the tax might have been, under certain circumstances, enforced under the provisions of the federal law had not the tax been promptly paid, or later paid as a debt against the residue. Aside from these observations, we adhere to our conclusions in the Hampton and Martin opinions to the extent they hold that the federal estate tax is not a tax against the estate, save and except that it must be paid therefrom, for the benefit and convenience of the taxing authorities. It follows that the judgment of the trial court is affirmed.

The whole Court sitting.

Chief Justice Fulton concurs in so much of the opinion as holds that the will did not manifest an intention on the part of testator as to the final burden of estate taxes. Judges Rees and Cammack dissent because they are of the opinion that the will manifests an intention on the part of the testator that the trusts should bear the estate taxes. All three dissent from that portion of the opinion which holds that the estate tax is not to be paid from the residue, or the trust estate.