Taft, J.
The principal question to be decided in the instant case may be stated as follows:
Where assets outside of the probate estate are included in a decedent’s taxable gross estate for estate tax purposes and such inclusion increases the federal estate tax and where the decedent has expressed no intention by will or otherwise as to the ultimate impact of that tax, may any portion of the burden of the federal estate tax be apportioned against such assets outside of the probate estate, in the absence of a statute providing for such apportionment?
This problem arises because, for many years, the federal estate tax has been levied not only on the assets of a decedent subject to probate administration but also upon a wide variety of assets not subject to probate administration, such as life insurance proceeds, property controlled by power of appointment, transfers with power to alter, amend or revoke, transfers in contemplation of death, transfers to take effect in possession or enjoyment at death, and transfers in which the decedent reserved the right to designate the persons who should possess or enjoy the *48 property or the income therefrom. Section 811, Title 26, U. S. Code.
Until enactment of the revenue act of 1932, the amount of estate tax involved, as compared to the amount thereafter, was relatively insignificant. With increases in rates and telescoping of brackets since 1932, the significance of the amounts involved has almost constantly increased, a very substantial increase having been made in 1941.
The problem of apportionment of the burden of the estate tax has been the subject of a substantial amount of litigation. See annotations, 7 A. L. R., 696, 115 A. L. R., 916, 117 A. L. R., 1186, 142 A. L. R., 1135, and 15 A. L. R. (2d), 1216.
Likewise, this problem has resulted in a very substantial amount of legislation. Thus, there are apportionment statutes dealing with this problem in at least 15 states, most of the statutes having been adopted after the decision of the Supreme Court of the United States in Riggs, Gdn., v. Del Drago (1942), 317 U. S., 95, 87 L. Ed., 106, 63 S. Ct., 109, 142 A. L. R., 1131, holding the New York statute constitutional.
The early decisions by courts of last resort, which held that, in the absence of a statute providing therefor, there could be no apportionment of the federal estate tax burden between the probate estate and assets outside of the probate estate usually gave two reasons for their conclusion: (1) That, since the federal statutes required the executor to pay the tax, those statutes indicated a congressional intent that the burden of the tax was to fall on the probate estate; and (2) that, since the federal statutes provided for apportionment in some instances, as with respect to proceeds of life insurance policies, they indicated that Congress did not intend apportionment in other instances. See Bemis et al., Trustees & Exrs., v. Con *49 verse (1923), 246 Mass., 131, 140 N. E., 686; Erics on et al., Exrs., v. Childs et al., Trustees (1938), 124 Conn., 66, 198 A., 176, 115 A. L. R., 907; Central Trust Co. v. Burrow (1936), 144 Kan., 79, 58 P. (2d), 469; Matter of Hamlin (1919), 226 N. Y., 407, 124 N. E., 4, 7 A. L. R., 701; Farmer’s Loan & Trust Co., Trustee, v. Winthrop, Exr. (1924), 238 N. Y., 488, 144 N. E., 769; Matter of Oakes (1928), 248 N. Y., 280, 162 N. E., 79.
In view of the reasons given by the Supreme Court of the United States for its decision in Biggs v. Del Drago, supra, we have some doubt as to the soundness of the reasons given to support the conclusions reached by those early decisions. Thus, it is said in the opinion of the court in the Del Drago case:
“We are of the opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax * * *.
“In the act of 1916 Congress turned from the previous century’s inheritance tax upon the receipt of property by survivors * * * to an estate tax upon the transmission of a statutory ‘net estate’ by a decedent. That act directed payment by the executor in the first instance, section 207, but provided also for payment in the event that he failed to pay, section 208. It did not undertake in any manner to specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax. * * *
“* * * Section 826 (b) does not command that the *50 tax is a nontransferrable charge on the residuary estate; to read the phrase ‘the tax shall be paid out of the estate’ as meaning ‘the tax shall be'paid out of the residuary estate’ is to distort the plain language of the section and to create an obvious fallacy.’’
The reasoning in that case indicates that there was no congressional intention which would operate as a reason against apportionment of the tax burden in part to nonprobate assets.
Since the decision in Riggs v. Del Drago, supra, courts of last resort in at least two states have, either by assuming to follow earlier cases or the weight of authority, decided against apportionment as between probate assets and nonprobate assets. See Seattle-First National Bank, Trustee, v. Macomber (1949), 32 Wash. (2d), 696, 203 P. (2d), 1078; In re Estate of Gelin (1949), 229 Minn., 516, 40 N. W. (2d), 342. On the other hand, apportionment in such cases has apparently been approved by the courts of last resort in at least five states. Industrial Trust Co., Exr., v. Budlong (R. I. 1950), 76 A. (2d), 600; Regents of University System of Georgia v. Trust Co. of Georgia (1942), 194 Ga., 255, 21 S. E. (2d), 691; In re Gato’s Estate (1950), 97 N. Y. Supp. (2d), 171 (affirmed 301 N. Y., 653, 93 N. E. [2d], 924, applying Florida law); Succession of Ratcliff (1947), 212 La., 563, 33 So. (2d), 114; Trimble v. Hatcher’s Exrs. (1943), 295 Ky., 178, 173 S. W. (2d), 985.
If the question of equitable apportionment of the federal estate tax were an open question in Ohio, the determination, as to whether such apportionment should be made, would necessarily involve a thorough analysis of the decisions from other states approving and disapproving such apportionment.
However, this court in Miller et al., Exrs., v. Hammond (1952), 156 Ohio St., 475, expressly approved *51 equitable apportionment of tbe federal estate tax.
Although the writer of this opinion dissented in the Miller case, the principal reasons for that dissent were:
1. The applicable Ohio statutes of descent and distribution gave the widow only one-third of what was available for distribution and, because of other Ohio statutes, nothing was available for distribution until the estate tax was paid by the executor.
2. The will of the testator indicated an intention that the widow was to get less than her statutory share and so negatived any intention to free from the burden of the estate tax any share which she might take that was greater than that provided for her in the will.
There are no such factors in the instant case.
Although, in distinguishing Lincoln Bank & Trust Co. v. Huber (Ky. 1951), 240 S. W. (2d), 89, I did quote from one of the authorities relied upon by the majority which indicated that, apart from statute the doctrine of equitable apportionment of the federal estate tax was against the weight of authority and peculiar to Kentucky, I relied upon other reasons to show that that Kentucky case did not represent a precedent for the decision made in the Miller case.
If a widow can impose the burden of the estate tax on those whose shares cause the imposition of that tax, because her share has not caused such imposition, I see no valid reason why the probate estate, which did not cause imposition of a definite part of the estate tax, cannot impose the burden of such part upon nonprobate assets which did cause the imposition of such part.
In the instant case, the-taxable estate of decedent for estate tax purposes was divided into two separate parts, the probate estate and the trust estate. The federal estate tax fell on both of those parts. Because *52 of the existence of the nonprobate assets in the trust estate, the federal estate tax was substantially increased beyond what it would have been if the trust assets had not been included in the decedent’s gross estate for the purpose of determining the amount of the estate tax. Under those circumstances and where there are no state statutes indicating and the decedent has indicated no intention as to who or what shall bear the burden of that tax, it is difficult to understand the justice of a rule of law that would impose the whole burden of the estate tax on one of the two separate parts of this decedent’s estate.
Even if the executor or administrator is required to pay the federal estate tax as a debt of the estate or “like other debts and expenses of administration” (Section 10509-121, General Code, and Tax Commission, ex rel. Price, Atty. Genl., v. Lamprecht, Admr. [1923], 107 Ohio St., 535, 140 N. E., 333, 31 A. L. R., 985), it does not follow that he cannot seek reimbursement for some portion of the amount which he has paid from assets which contributed to the amount of that tax or from those who have received those assets. See In re Estate of Gatch (1950), 153 Ohio St., 401, 407, 92 N. E. (2d), 404.
Although the federal statutes provide that the estate tax “shall be paid by the executor to the collector” (Section 822 b, Title 26, U. S. Code), they also provide that, if the tax is not paid when due, then the beneficiary or trustee in possession of the property, to the extent of its value, shall be personally liable for the tax (Section 827, Title 26, U. S. Code). This clearly indicates a congressional intention that the tax shall represent an obligation not merely of the probate assets but of all of the assets included in the decedent’s gross estate for estate tax purposes.
Thus, under the federal statutes, the burden of the *53 estate tax rests upon the whole estate, including both probate and nonprobate assets. While the language of the federal statutes (see especially Section 826 b, Title 26, U. S. Code) would reasonably justify a contrary conclusion, the reasoning of the federal Supreme Court in the R%ggs case clearly indicates that, except in a limited number of instances such as provided for in Section 826 (c) and (d), Title 26, U. S. Code, the federal statutes do not place any primary liability on anyone for this burden, but that the question, as to who is primarily liable, is one of state law, and that the federal government is not interested in that question. There appears to be no possible reason remaining for placing primary liability on the probate estate, except the statutory obligation of the executor to pay debts due the United States before distribution. That reason, as a ground for denying apportionment, was rejected by the decision in Miller v. Hammond, supra. Furthermore, the mere fact that the executor has an obligation to pay a particular indebtedness does not negative a right which he may have to contribution from someone else on account of that payment. See Camp v. Bostwick (1870), 20 Ohio St., 337, 5 Am. Rep., 669; In re Estate of Gatch, supra.
In such a situation, where several individuals are subject to liability or loss of their property to discharge a common obligation (Baltimore & Ohio Bd. Co. v. Walker [1888], 45 Ohio St., 577, 16 N. E., 475), one of them, who pays or performs more than his share of that obligation (Gaster v. Waggoner [1875], 26 Ohio St., 450) or who suffers loss by reason of appropriation of his property to satisfy more than such share (Robinson v. Boyd [1899], 60 Ohio St., 57, 53 N. E., 494), is ordinarily entitled to contribution from others who have not paid or performed their shares of the obligation. See Walker v. Hall (1864), 15 Ohio *54 St., 355, 86 Am. Dec., 482; 13 American Jurisprudence, 12, Section 9.
Without the help of any agreement or of any statutes providing for apportionment of the burden represented by such a common obligation, this court has in a great variety of such situations consistently recognized such a right of contribution, and, in determining the shares of those subject to the burden represented by such a common obligation, has apportioned such burden equitably among those subject to that burden. In addition to those in the forgoing five-cases cited, there are many decisions and statements by this court'recognizing equitable apportionment and contribution in such situations. See, for example, Russell v. Failor (1853), 1 Ohio St., 327, 59 Am. Dec., 631; Acheson v. Miller (1853), 2 Ohio St., 203, 59 Am. Dec., 663; Hartwell v. Smith (1864), 15 Ohio St., 200, 203; Umsted v. Buskirk (1866), 17 Ohio St., 113, 118; McCrory v. Parks (1868), 18 Ohio St., 1; Oldham v. Broom (1875), 28 Ohio St., 41, 48. 49, 50; Crouse v. Wagner (1885), 41 Ohio St., 470; Harpold v. Stobarl (1889), 46 Ohio St., 397, 404, 405, 21 N. E., 637; Clark v. Lindsey (1890), 47 Ohio St., 437, 447, 25 N. E., 422, 9 L. R. A., 740; Corrigan v. Foster, Admx. (1894), 51 Ohio St., 225, 227, 37 N. E., 263; Koelsch v. Mixer, Admr. (1894), 52 Ohio St., 207, 212, 39 N. E., 417; Assets Realisation Co. v. American Bonding Co. of Baltimore (1913), 88 Ohio St., 216, 253, 102 N. E., 719, Ann. Cas. 1915A, 1194.
As to all assets included in a decedent’s estate for estate tax purposes, whether probate or nonprobate assets, the liability of those who take such assets to discharge the estate tax (Section 827, Title 26, U. S. Code) appears to represent such a liability to discharge such a common obligation. It follows that, in the absence of any apparent intention of decedent *55 to the contrary, one who pays more than his share of that common obligation should be entitled to contribution from those who have not paid their share.
The law of the decision by this court in Young Men’s Christian Assn. v. Davis (1922), 106 Ohio St., 366, 140 N. E., 114 (affirmed, 264 U. S., 47, 68 L. Ed., 558, 44 S. Ct., 291), is set forth in the three paragraphs of the syllabus of that case.
Paragraph one of the syllabus in that case reads:
“The tax or excise provided for by the federal act of 1918, entitled an ‘estate tax,-’ is a legal charge made upon the decedent’s estate and his right to transmit it either by will or by law as an intestate. ’ ’
Clearly, in the instant case, the trust assets constituted a part of that estate. Otherwise, the federal government could not, on the decedent’s death, levy as it has “a legal charge” upon the right to transmit them. Neither party has questioned the right to make such a levy.
Paragraph two of the syllabus in that case reads:
“The charges imposed by law upon an estate must first be paid out of the estate as a whole, before payment of the charges imposed upon the estate by the will of the testator.”
This indicates that the estate tax is a burden on “the estate as a whole,” including the trust assets.
Unless some statute (which I believed there was in Miller v. Hammond, supra) or the expressed intention of the decedent (which was recognized by paragraph three of the syllabus in the Davis case and which I believed was set forth in the decedent’s will in Miller v. Hammond, supra, but which is not present in the instant case) requires a different result, there is no apparent reason why the equitable rule, requiring those who are obligated to discharge a common burden to share that burden, should not operate to require in *56 the instant case an equitable apportionment of the federal estate tax burden between the probate assets and the trust assets.
It is argued by the trustee that, since the trust agreement represents a specific disposition of property, it discloses an intention by the decedent to prefer those who take under the trust agreemnt to those who take under the statutes of descent and distribution.
To follow such an argument would lead to many difficulties in determining the intent of a decedent, where the decedent has expressed no intent. Speculation by courts as to the intent of decedents on this subject, where they have expressed no intent, can usually only lead to uncertainty. Unless there is a clear expression of intention by a decedent, as in a will or perhaps in a trust agreement, it is just as reasonable to determine that such a decedent intended to benefit her husband, who would take under the statutes of descent and distribution, as it is to determine that she intended to benefit her sister, for whom she had provided in a trust agreement. The decedent in the instant case has expressed no intention which can be given any effect in determining the ultimate impact of the federal estate tax. As stated in the opinion by Rugg, C. J., in Bemis v. Converse, supra, 687:
* * Courts cannot speculate concerning the intention of settlors and testators as to where they intend the burden of taxes to rest. The instrument as written must govern. Opportunity is freely open in framing trust deeds and wills to make full and accurate expression of desire and intention respecting the payment of taxes and the particular beneficiaries whose shares shall be exonerated from or bear that pecuniary exaction for the support of government. Specific provision on this point is familiar in wills and is not infrequently found in other instruments. In the ab *57 sence of a definite declaration on the subject it must be presumed that the intention was that the ultimate weight of taxation must rest where the law places it. It cannot be presumed that anything else was intended than what is stated in the written instrument.”
Furthermore, it would be difficult to reconcile a decision in the instant case, which followed such an argument, with the decision of this court in In re Estate of Gatch, supra, 401. In that case, the federal statute, specifically providing for apportionment of part of the estate tax to insurance proceeds, was involved. The apportionment under that statute of part of the estate tax to such nonprobate assets would reach substantially the same result as the equitable apportionment, which we believe should be made to nonprobate assets in the absence of a statute or the expressed intention of a testator requiring a different result. In the Gatch case the testator’s will provided:
“I direct that all my just debts and funeral expenses be first paid out of my estate, and I further direct that all taxes, both state and federal shall be a charge against the principal of my estate and shall be paid therefrom and shall not bé charged against the interest of any distributee.”
As indicated by paragraph one of the syllabus and by the unanimous decision rendered, this court held that, notwithstanding the foregoing provision in the testator’s will, there was “no specific direction” in that will that the federal estate tax, resulting from inclusion of insurance proceeds in the testator’s estate for estate tax purposes, be paid out of the probate estate. There would appear to have been more reason for inferring such an intent from what the testator said in the will involved in the Gatch case than there is for inferring such intent from what the decedent did not say in the instant case.
*58 In Industrial Trust Co., Exr., v. Budlong, supra, the court reached a conclusion similar to that reached by this court in the Catch case. In the Budlong case such an intent might more easily have been inferred from the provisions of the will relative to taxes, which were involved in that case. Furthermore, in that case, equitable apportionment of part of the estate tax to nonprobate assets was approved although no statute, such as the federal statute relating to proceeds of insurance, was involved. In fact, the nonprobate assets were, as in the instant case, the assets of inter vivos trusts. After describing the holding of the Rhode Island court in that case, Matthias, J., stated in the opinion in Miller v. Hammond, supra, at page 493:
“That holding, in our opinion, discloses a proper application of equitable principles for the purpose of preventing injustice to some heirs and unjustified windfalls to others * * *.’
The instant case is not like Young Men’s Christian Assn. v. Davis, supra, where, by the terms of her will, the testator indicated a preference for certain legatees by providing for them specifically and then specifically stating that what was left was to go to other legatees. In such an instance, especially where only probate assets are involved, it is apparent that those who are designated by the testator to take what is left over were intended by the testator to bear the burden of the debts, estate tax and other obligations of the estate, while the testator did not intend that those who were specifically provided for were to bear that burden.
In the instant case, in determining the share of the common obligation represented by the estate tax which should be allocated to the trust estate, there appears to be no fairer or more reasonable approach than to compare the value for estate tax purposes of non-probate assets which had an effect in generating estate *59 tax liability with the value for estate tax purposes of probate assets which had that effect, and to allocate on that basis to nonprobate and to probate assets their proportionate share of the whole estate tax liability. See 13 American Jurisprudence, 26, 27, Section 26. Thus, in the instant case, the trust estate will be required to pay such portion of the total tax paid as the value of the trust assets, for estate tax purposes, bears to the sum of (a) the net estate, for estate tax purposes, and (b) the exemption allowed in computing that net estate, determined under Section 935 (c), Title 26, U. S. Code.

Judgment reversed.

Zimmerman, Middleton, Matthias and Hart, JJ., concur.
"Weygandt, C. J., and Stewart, J., dissent.