## Martin et al. v. Martin's Adm'r et al.

June 21, 1940.

W. B. Ardery, Judge.

Field McLeod for appellant Mildred P. Martin.

E. C. O'Rear for appellant Margaret Davis.

Oldham Clarke and Allen & Clarke for appellee Lulie S. Martin.

Colvin P. Rouse for other appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The sole question presented by this appeal is whether or not the amount of what has come to be

known at the Federal estate tax (Fed. Stat. Ann., 1918 Supp., Sections 201, 202, 203, 205, 207, etc.; U. S. Compiled Statutes 1918, Section 6336½b. also found in U. S. Code Annotated 1934 Ed., Section 410; present ed., 26 U. S. C. A. Int. Rev. Code, Section 810) should be borne equally by the beneficiaries as between themselves, regardless of the character of property received by them from the estate, or whether the amount of the federal demand should be borne exclusively by the personalty left by the decedent thus discriminating against and reducing the amount which the distributees of the *latter* class of property would receive under our statute of Descent and Distribution?

The facts are: Henry L. Martin, Sr., died intestate on December 4, 1938, a resident of Woodford County, and the value of his estate both personalty and realty amounted in the aggregate to much more than $50,000, which amount is exempted under the federal statute—the calculated tax due the federal government amounting to $19,173.92. The value of the real estate of the decedent largely exceeded the value of his personalty, but the latter consisted of more than enough to discharge the federal exaction created by the statute. The administrator who qualified after Martin's death paid the federal demand out of the personalty and he later filed this declaratory judgment action in the Woodford Circuit Court against all of the heirs and distributees of the decedent to obtain instruction as to how the balance of the estate after deducting the federal demand should be distributed, i. e., whether it should be borne out of and exclusively by those to whom the personal property of the estate would go under our statute, or whether it should be borne equally by them and by those inheriting decedent's real estate in the proportion of the value of the property that each received? The learned trial judge adopted the latter conclusion and rendered judgment accordingly, to reverse which the opponents of that interpretation prosecute this appeal.

At the threshold we are asked to reverse the case of Hampton's Administrator v. Hampton, 188 Ky. 199, 221 S. W. 496, 10 A. L. R. 515, in which we determined the identical question in accordance with the judgment of the trial court and which opinion it followed in rendering the judgment appealed from. The request by learned counsel for appellants is based on what they

term as the "unsoundness of the Hampton opinion," and which they contend stands almost aloof from the list of cases decided since it was rendered, and in which it is claimed the question was decided contrary to the way it was done in the Hampton opinion. The cases relied on by learned counsel as sustaining their contention, and to induce us to retract the Hampton opinion, as contained in their brief are: Plunkett v. Old Colony Trust Co., 233 Mass. 471, 124 N. E. 265, 7 A. L. R. 696; Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969; Hepburn, Ex'r v. Winthrop, etc., 65 App. D. C. 309, 83 F. (2d) 566, 105 A. L. R. 310; New York Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660; Turner v. Cole, 118 N. J. Eq. 497, 179 A. 113; Y. M. C. A. v. Davis, 264 U. S. 47, 49, 44 S. Ct. 291, 68 L. Ed. 558; In re Hamlin, 226 N. Y. 407, 124 N. E. 4, 7 A. L. R. 701; People v. Pasfield, 284 Ill. 450, 120 N. E. 286. We have read each of them and find, to begin with, that they (wherein the question was presented) chiefly, if not exclusively, dealt with cases where the decedent died testate whereby the inference was drawn by the court dealing with the question that he had the right to direct in his will how the federal burden should be distributed as between the beneficiaries provided for in his will, and not having done so it would be presumed that he intended for the personalty of his estate to bear the burden of the tax (but which we do not now determine) which would, as we have said, operate to the detriment of the legatees of the testator, to whom he gave his personal property, and relieve his devisees, to whom he gave his real estate.

We have no such situation here, since the decedent died intestate and, therefore, performed no act from which such inferences or presumptions might arise. Moreover, a number of those cases do not deal with the question we have here, except insofar as they attempt to define the nature of the federal demand, which those opinions generally conclude is an "Estate Tax," collectible by the federal government from every class of property of the decedent whether in the hands of the immediate takers or their transferees for a period of ten years after the death of decedent; but with the proviso that—for the convenience of administration—the personal representative of the decedent must pay the exacted amount to the federal government and which it was possibly contemplated would be paid out of the personalty

if there was enough of it before any distribution of the personalty was made among beneficiaries. The statute therefore does not impose the tax on the personalty *as between* the government and the distributees of the estate; but only that the tax is required to be paid by the personal representative. It is conceded in all of those opinions that the federal statute nowhere attempts to deal with or to prescribe how the burden of the tax shall be borne as between the beneficiaries receiving the net amount of the property after deducting the tax. Appellants contend that the tax—whatever may be its true name or character—should be treated under our statute of Descent and Distribution as a debt or as an ad valorem tax against all the property comprising the estate and payable primarily out of the personalty of the decedent's estate before resorting to his real estate.

The same argument was made and answered by us in the negative in the Hampton opinion, which conclusion was based partly upon inferences to be drawn from Section 208 of the federal act providing for contribution in certain contingencies and from which we indulged the inference that the doctrine of contribution was in the mind of Congress when it enacted the statute; although we recognized in that opinion that the tax was primarily payable by the personl representative out of the personalty of the estate in his hands, and which provision—it was concluded—was made to simplify the administration of the act for the benefit of the authority levying it, which is the federal government. On that phase of the case we said in that opinion [188 Ky. 199, 221 S. W. 497, 10 A. L. R. 515] : "It is conceded that there is no express provision to that effect [a charge on personalty], but insisted that the nature of the tax, the method of its collection and other considerations make it clear that such was the purpose of Congress. We do not regard as controlling the fact that the primary duty of paying the tax is imposed upon the executor, in view of the fact that the executor may be 'any person who takes possession of any property of the decedent,' and the further consideration that the obligation of the personal representative to pay the tax is a mere rule of administration to insure its payment, and does not in any way affect the rights of the heirs and distributees as among themselves. Nor can we say that the words 'prior liability,' in Section 208, necessarily refer to the liability of the personal estate of the decedent. They may as well refer

to prior liability imposed by statute, or by the will of the testator. Considering the act as a whole, and particularly the provisions with respect to reimbursement and contribution (in Section 208), we cannot escape the conclusion that Congress did not intend to discriminate between the heirs and distributees, but intended that every portion of the estate should bear its proportionate part of the tax, subject. however, to the right of the decedent to provide by will out of what portion of his estate the tax should be paid. The case of Knowlton v. Moore, 178 U. S. 41, [20 S. Ct. 747], 44 L. Ed. 969, presents a very interesting history of the origin and nature of death taxes, probate duties, succession duties, etc., but has no direct bearing on the question under consideration.'' That excerpt was immediately preceded by this statement: ''In view of the inequality that would result, we are reluctant to adopt the view that the estate tax is a charge on the personal estate, unless compelled to do so by the language of the act itself.'' Our final conclusion as expressed in the Hampton opinion was and is: ''Laying aside the federal act as not controlling on the question of descent and distribution, and coming to our own statutes, we find that the widow is entitled to one-half of her husband's surplus personalty, Kentucky Statutes, Section 2132, and that the surplus is obtained by deducting from the whole of the personalty the decedent's funeral expenses, charges of administration and debts. Clearly the estate tax, which was never an obligation of the decedent, cannot be regarded as a debt within the meaning of our statute.''

The rule announced by us in the Hampton opinion with reference to the deductibility of the tax to ascertain the net amount each beneficiary would receive of the estate was approved in the later case of Bingham's Administrator v. Commonwealth, 196 Ky. 318, 244 S. W. 781. It is true that the question arose in that case in a somewhat different manner than that by which it is presented in this case, but the principle involved was, as we conclude, identical in each case and so much so as to justify the conclusion that the Bingham opinion is in line with and approves the doctrine of the previous Hampton opinion. The same question (on all fours) also came before the Supreme Court of the State of Arkansas in the case of Thompson v. Union Mercantile Trust Company, 164 Ark. 411, 262 S. W. 324, 37 A. L. R. 536, and it determined the rights of the parties (benefici-

aries of the estate) in accord with the rule approved by us in the Hampton opinion.

We also find the text in 33 Corpus Juris 314, Section 108, saying: "The (Federal) Estate Tax Law has nothing to do with the distribution of the estate among legatees or next of kin, which is a matter that concerns the court in which the estate is being administered, whose duty and right it is to determine the method in which the burden of the tax shall be equitably distributed, where the testator's will is silent upon the subject." In notes 25, 26 and 27 to that text are found federal inferior court cases, and other state ones approving the rule announced in our Hampton opinion.

Indeed, the foundation of the industriously written argument of counsel for appellants is bottomed entirely upon their definition—supported by some of the opinion they rely on—of the nature and character of the involved federal tax and from which they assume by analogy should primarily be paid out of personal property left by a decedent before touching the real estate left by him and which rule they argue should apply as between the beneficiaries of the two different classes of property. However, since no such requirement is made in the federal statute levying the tax, and since it would, as held in the Hampton opinion, be unjust and inequitable, we conclude that in the absence of specific direction to the contrary justice requires that all classes of beneficiaries participating in the net value of the estate left after the federal tax is satisfied and deducted should, as between themselves, bear their just proportion of it.

We therefore coincide with the judgment of the learned trial judge and it is affirmed. The whole court sitting, except Judge Rees who is absent.