**ESTATE of William A. WEBBER, Sr., Deceased, William A. Webber, Jr., Executor, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 1693.**

United States District Court
E. D. Kentucky,
Lexington Division.

Jan. 6, 1967.

Gess, Mattingly, Saunier & Atchison, by Jack F. Mattingly, Lexington, Ky., for plaintiff.

Richard C. Pugh, Acting Asst. Atty. Gen., Donald R. Anderson, Robert F. Sama, Attys., Dept. of Justice, Washington, D. C., George I. Cline, U. S. Atty., Lexington, Ky., for defendant.

## OPINION

SWINFORD, Chief Judge.

This is an action for the recovery of income taxes in the sum of $104,935.66, plus a penalty of $33,065.42, plus interest in the amount of $26,233.92, for a total of $164,235, paid by the taxpayer for the year 1959. The record is before the court on the plaintiff's motion for summary judgment and on the defendant's motion for partial summary judgment.

The Webber Sausage Company, Inc. of Harrison County, Kentucky, is a corporation with five thousand shares of

outstanding stock which were owned equally by William A. Webber, Sr. and William A. Webber, Jr. There was a written agreement between these two stockholders as parties of the first part and the Webber Sausage Company, Inc. as party of the second part, which provided, among other things, as follows:

"2. It is further contracted, covenanted and agreed that the parties of the first part, or either of them, do hereby contract to sell their respective interest and stock to the party of the second party effective at any time within a period of eighteen (18) months from the date of death of the parties of the first part, or either of the(m), for and in consideration of and under the terms and conditions as set out in the next succeeding paragraph.

"3. That the further consideration to be paid by the party of the second part to the parties of the first part, or either of them, shall be the book value of the said stock on the last day of the month in which the death of the parties of the first party, or either of them, should occur. That twenty (20%) per cent of the consideration for said stock transfer as determined by the book value aforesaid shall be paid to the estate or estates of the decedent or decedents at the time of the transfer of said stock to the party of the second part and twenty (20%) per cent of said consideration each year thereafter on the same date until the full consideration for said stock has been paid and the unpaid balance shall bear interest at the rate of five (5%) per centum per annum until paid and the second party shall have the right and privilege to pay to the personal representative or personal representatives of the decedent or decedents any part or all of the unpaid balance before the due date or dates thereof.

"4. The parties of the first part, or either of them, do hereby bind their or his Executor, Executors, Administrator, Administrators or Assigns to perform and fulfill the terms of this contract as fully and completely as if they, or either of them, were personally present to so do."

█ William A. Webber, Sr. died testate on May 5, 1959. At the time of his death he was the father of William A. Webber, Jr. and three daugthers. He devised to William A. Webber, Jr. approximately two acres of improved land in Harrison County, Kentucky, and, as a part of the item making this devise, there was a provision that a house on the property was to be torn down or removed. It is noted here that much of the brief of the plaintiff is addressed to the question as to whether or not provision for tearing down or removing the house on this real estate was to limit the estate of William A. Webber, Jr. in the two acres of improved property. The argument is well taken and it is the holding of this court that William A. Webber, Jr. took a fee simple title in the property as of the date of the death of the testator. This was the holding of the Harrison County Circuit Court as evidenced by an exhibit filed in the record. The defendant makes no contention to the contrary but concedes that the proviso did not limit the fee simple estate of William A. Webber, Jr., in this property.

By another provision of the will, the testator bequeathed to William A. Webber, Jr. the sum of $70,000 in cash "to be paid to him as soon as possible after my death". In further items of the will he left the remainder of his estate to his three daughters in equal shares and with certain provisions as to creating a trust from which they were to be paid monthly allowances for a given time.

The testator, by another provision of the will, nominated his son, William A. Webber, Jr., as his executor, for which office he qualified and has continued to act since.

On June 23, 1959 the bequest of $70,000 was paid by the executor to William A. Webber, Jr.

On July 14, 1959, in accordance with the agreement, the company redeemed

from the estate the 2,500 shares of stock which had belonged to William A. Webber, Sr. at the time of his death. The company obligated itself to pay for the stock the sum of $235,835.02, which was its book value on the date fixed by the agreement and which was considered to be its value for estate tax purposes. Of this total sum, $47,167.02 was paid on August 18, 1959 and the remainder evidenced by four equal notes.

The executor filed a Kentucky inheritance tax return which was computed to be $8,312.87, of which the share of William A. Webber, Jr. as beneficiary was $2,211.32. At a later date, October 5, 1962, William A. Webber, Jr. reimbursed the estate for his proportionate share of this Kentucky state tax. The federal estate tax, computed to be $62,999.32, was paid by the executor out of the estate on February 29, 1960. An additional sum of $3,-935.50, plus interest, was paid on October 29, 1961. The executor filed a federal fiduciary income tax return on August 6, 1964 for the year ending December 31, 1959.

On July 30, 1965, the Commissioner of Internal Revenue assessed a deficiency of $104,935.66, plus interest on the estate claiming that $147,777.50 of the $235,835.02 paid by the company was a distribution to which Section 301(c) of the Internal Revenue Code of 1954 applied which should be taxed as a dividend. The Commissioner also assessed a 25% penalty in the amount of $26,233.92 for untimely filing. A total of $164,235 was paid by the taxpayer on July 16, 1965. This action is brought for a refund of this amount.

The plaintiff seeks to recover on the ground that the purchase and redemption of the 2,500 shares of stock by the Webber Sausage Company, Inc. from the estate of William A. Webber, Sr., for which it paid the sum of $235,835.02, was not a dividend distribution to be considered as ordinary income. It points out that there was no gain or loss realized on the purchase and that no other amount was received by the estate from the company except the payment of a salary check which had accrued to the deceased as of the date of his death and that the transaction of the purchase and redemption of the stock falls within the provisions of Section 302(b) (3) of the Internal Revenue Code of 1954. That section is as follows:

"(b) Redemptions treated as exchanges—

"(3) Termination of shareholder's interest—Subsection (a) shall apply if the redemption is in complete redemption of all the stock of the corporation owned by the shareholder."

The defendant takes the position that at the time of the redemption of the William A. Webber, Sr. stock by the Webber Sausage Company, Inc. on August 18, 1959, that William A. Webber, Jr. was a beneficiary of the estate and that there had not been a complete determination of the shareholder's interest. It argues that this case falls within the provisions of Section 318(a) (2) (A) which provides that stock owned directly or indirectly by an estate shall be considered as being owned by its beneficiaries and stock owned by the beneficiaries shall be considered as being owned by the estate.

It is agreed by the parties that the only question for determination in applying these sections is for the court to determine whether or not William A. Webber, Jr. was a beneficiary of the estate at the time of the redemption of the stock by the Webber Sausage Company, Inc.

Treasury Regulations on Income Taxes (1954 Code) under Section 1.318–3 (a) states that for the purpose of applying Section 318(a) relating to estates under administration a person shall no longer be considered a beneficiary when he has no claim against the estate and where there is only remote possibility that the estate will seek the return of property or payment from him as contribution or otherwise to satisfy claims against the estate or expenses of administration.

■ By this criterion the court must conclude that William A. Webber, Jr. was a beneficiary of the estate on August 18, 1959 at the time of the redemption of the estate stock. It may be true, as argued, that he had received all property to which he was entitled as a beneficiary as title to the real estate had vested in him on the date of the death of the testator, to-wit, May 5, 1959, and the bequest of $70,000 had been paid to him on June 23, 1959. His separation as a beneficiary, however, does not rest on his having received his full share of the estate but on the further ground of whether it would be necessary for the estate to seek the return of property from him. It seems clear that there is more than a remote possibility that he will have to refund money to the estate to cover all tax liability which he as a beneficiary must owe.

The confusion on the whole matter arises from the rather unusual way in which the estate was handled. The distribution to William A. Webber, Jr. as a beneficiary under the will was made before the state and federal taxes were ascertained. It is fundamental in the settlement of estates that the tax liabilities are to be determined as one of the first steps even though it is apparent that the estate will meet all of its obligations and that each of the named beneficiaries will receive his share under the terms of the will. The testator's three daughters were residuary legatees. The residue of the estate could only be determined after the payment of all taxes and indebtedness. The share devised and bequeathed to William A. Webber, Jr. is bound to the estate and he therefore remains a beneficiary of the estate until it is determined what tax is due from his share. To declare him to be no longer a beneficiary would be to relieve him of his portion of the tax which would have to be borne by the residuary legatees.

■ As I have heretofore stated, this situation presents more than a remote possibility that William A. Webber, Jr. may be held responsible for certain claims against the estate. Kentucky law provides that unless a will specifically directs the payment of taxes, each beneficiary must pay his share of the Kentucky inheritance tax and his share of the federal estate tax. Hampton's Admr. v. Hampton, 188 Ky. 199, 221 S.W. 496, 10 A.L.R. 515; Martin v. Martin's Adm'r., 283 Ky. 513, 142 S.W.2d 164. The will of William A. Webber, Sr. gave no specific direction regarding the payment of taxes. Consequently, William A. Webber, Jr. was liable for a proportionate share of the federal estate tax and the Kentucky inheritance tax.

At the time of the stock redemption William A. Webber, Jr. had not paid the state and federal taxes attributable to his bequest. The states taxes and the federal taxes were paid subsequently to the date of redemption. William A. Webber, Jr. has now paid the state tax attributable to his bequest but not his pro rata share of the federal estate tax. This non-payment of his pro rata share has two implications: (1) He has received an excessive amount from the estate because his share was not decreased by the proportionate amount of estate tax which had to be paid; (2) the other beneficiaries of the estate received shares lesser than anticipated because of the reduction necessary to pay William A. Webber, Jr.'s share of the federal estate tax.

The estate claims that the estate tax due is not a claim against the estate or a debt of the estate, citing several Kentucky cases. However, it seems that the Congressional intention concerning family corporation dividends and redemptions is best satisfied by holding that the possible claim by the estate itself or the claim of the other beneficiaries for William A. Webber, Jr. to pay his pro rata share of the estate is indeed a claim against the estate. (See House Report No. 1337, 83rd Congress, 2d Session, p. 36; 3 U. S. Code Congressional and Administrative News, 1954, P. 4017, 4061.) The primary Congressional intention in this area of tax law was to prevent tax avoidance by distributing income

through the medium of a stock redemption. The cases cited by the plaintiff are concerned primarily with tax apportionment among beneficiaries and any holding that the federal estate tax is not a debt within the meaning of a particular state statute cannot be regarded as a construction of a federal tax statute and appropriate regulations. That the aforementioned statement is only logical and practical is borne out by the words of the Kentucky court in Trimble v. Hatcher's Ex'rs., 295 Ky. 178, 186, 173 S.W.2d 985, 989 (1943):

> "There may arise many cases, as seems to be the case here, where the personal representative is without funds to pay the heavy estate taxes upon the estate created by the revenue law. The inclusion in such gross tax estate of the value of property passing under power of appointment, or gifts in contemplation of death, would frequently create that situation. The personal representative who has paid, or is to pay the tax out of the trust estate, should have the right of subrogation to the position of the sovereign which has received its tax, and to collect from those against whom the tax might have been, under certain circumstances, enforced under the provisions of the federal law had not the tax been promptly paid, or later paid as a debt against the residue."

Even though, as in the present case, there are funds sufficient to pay the estate tax, equity is done when William A. Webber, Jr. is held to be responsible for his pro rata share.

Using either or both of the two implications, (1) that the estate may require William A. Webber, Jr. to pay his pro rata share, or (2) that the estate may require him to pay for the reduction in the shares of the other beneficiaries, will allow a construction of Kentucky case law which is consistent with Section 2001 of the Internal Revenue Code of 1954, that is, a tax upon the transfer of the entire taxable estate, not the shares of the beneficiaries, and

Section 2002 which makes the estate executor liable for payment of the tax.

Therefore, William A. Webber, Jr. was a beneficiary of the estate at the time of the stock redemption, his stock holdings must be attributed to the estate of William A. Webber, Sr., and the redemption of the estate's stock in the company did not constitute a complete termination of the stock held by the estate, thereby causing the redemption to be taxable as an income dividend.

The plaintiff's motion for summary judgment should be overruled. The defendant's motion for partial summary judgment should be sustained.

The question of fact as to whether the failure to file a fiduciary return for the taxable year ending December 31, 1959, was due to reasonable cause and not to wilful neglect, is one on which the court will have to hear proof. The date for such hearing will be assigned upon the call of the docket at the next regular session of this court, to-wit, Monday, March 20, 1967 at 10:00 A.M.

The attorneys for the defendant will submit findings of fact, conclusions of law and judgment in accordance with this opinion.

## APPENDIX

Internal Revenue Code of 1954:

SEC. 301. Distributions of property.

(a) *In general.*—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in sub-section (c).

\* \* \* \* \* \*

(c) *Amount taxable.*—In the case of a distribution to which subsection (a) applies—

(1) *Amount constituting dividend.*—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

\* \* \* \* \* \*

(26 U.S.C.1964 ed., Sec. 301.)

SEC. 302. Distributions in redemption of stock.

(a) *General rule.*—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

(b) *Redemptions treated as exchanges.*—

\* \* \* \* \* \*

(3) *Termination of shareholder's interest.*—Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder.

\* \* \* \* \* \*

(c) *Constructive ownership of stock.*—

(1) *In general.*—Except as provided in paragraph (2) of this subsection, section 318(a) shall apply in determining the ownership of stock for purposes of this section.

\* \* \* \* \* \*

(d) *Redemptions treated as distributions of property.*—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies.

\* \* \* \* \* \*

(26 U.S.C.1964 ed., Sec. 302.)

SEC. 318. Constructive ownership of stock.

(a) *General Rule.*—For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable—

\* \* \* \* \* \*

(2) *Partnerships, estates, trusts, and corporations.*—

(A) *Partnerships and estates.*— Stock owned, directly or indirectly, by or for a partnership or estate shall be considered as being owned proportionately by its partners or beneficiaries. Stock owned, directly or indirectly, by or for a partner or a beneficiary of an estate shall be considered as being owned by the partnership or estate.

\* \* \* \* \* \*

(26 U.S.C.1964 ed., Sec. 318.)

Treasury Regulations on Income Tax (1954 Code):

Sec. 1.318–3 *Estates, trusts, and options.*

(a) For the purpose of applying section 318(a), relating to estates, property of a decedent shall be considered as owned by his estate if such property is subject to administration by the executor or administrator for the purpose of paying claims against the estate and expenses of administration notwithstanding that, under local law, legal title to such property vests in the decedent's heirs, legatees or devisees immediately upon death. The term "beneficiary" includes any person entitled to receive property of a decedent pursuant to a will or pursuant to laws of descent and distribution. A person shall no longer be considered a beneficiary of an estate when all the property to which he is entitled has been received by him, when he no longer has a claim against the estate arising out of having been a beneficiary, and when there is only a remote possibility that it will be necessary for the estate to seek the return of property or to seek payment from him by contribution or otherwise to satisfy claims against the estate or expenses of administration. When, pursuant to the preceding sentence, a person ceases to be a beneficiary, stock owned by him shall not thereafter be considered owned by the estate, and stock owned by the estate shall not thereafter be considered owned by him.