**ESTATE of James A. WHIPPLE, Deceased, Mildred G. Whipple, Executrix, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1577.**

United States District Court
W. D. Kentucky,
at Paducah.

July 9, 1968.

J. Lane Peck, Schuette & Taylor, Paducah, Ky., Thomas J. Marshall, Paducah, Ky., for plaintiff.

E. W. Rivers, U. S. Dist. Atty., Louisville, Ky., for defendant.

## OPINION

SHELBOURNE, Senior District Judge (by designation).

This is an action instituted by Mildred G. Whipple as the personal representative of the estate of James A. Whipple, deceased, to recover federal estate tax assessed by the Commissioner of Internal Revenue. The amount involved in this proceeding, the portion of the assessment relating to the widow's marital deduction and the interest assessed and paid, is not in dispute.

James A. Whipple died intestate August 6, 1960, and Mrs. Whipple qualified as the Administratrix of the estate. November 6, 1961, a federal estate tax return was filed showing a federal estate tax of $149,671.54, which was paid simultaneously with the filing of that return. April 17, 1964, following an audit of the federal estate tax return a deficiency in the amount of $29,022.97 was assessed by the Commissioner and the amount of that assessment, together with interest in the sum of $2,065.00 was paid shortly thereafter. Certain adjustments were made by agreement and on December 13, 1965, a claim was filed for refund in the sum of $3,266.43, the amount attributable to the computation of the marital deduction. The claim was timely and was disallowed on May 13, 1966. The pivotal question involved in this case is whether for purposes of the marital deduction the widow's share under the Kentucky law of intestacy is to be reduced by a proportionate share of the federal estate tax attributable to the marital deduction. The federal statute involved is Internal Revenue Code of 1954, U.S.C. Section 2056(b) (4) (A).

The case was submitted to the Court on the pleadings, a petition, answer and a general stipulation of facts, and has been fully briefed and orally argued. A portion of the delay in the final hearing of the case was occasioned by the illness and death of plaintiff's counsel, the retirement from the Revenue Service by defendant's counsel and the selection of a successor, together with a request for oral argument which was held on May 6, 1968.

The stipulation of facts insofar as material will be stated in substance in the Findings of Fact, and insofar as they are essential to a proper understanding and decision of this case are as follows:

*Findings of Fact*

1. James A. Whipple, a resident of Kentucky, died intestate on August 6, 1960.

2. The federal estate tax return showing a tax due of $149,671.94 was filed November 6, 1961, and the tax shown to be due was paid on that date.

3. Subsequent to an audit certain adjustments were made to the return as filed. The only adjustment in issue in this case is that affecting the amount, if any, of the federal estate tax properly chargeable by reason of the marital deduction to the surviving spouse, Mrs. Mildred G. Whipple.

4. The deficiency assessment made by the Commissioner in the sum of $29,022.97 was assessed April 17, 1964, and paid in advance on April 13, 1964. On April 29, 1964, interest which allegedly accrued on the amount of the assessment in the sum of $2,065.00 was paid.

5. A claim for refund in the amount of $3,266.43 and the interest paid was filed December 13, 1965, and was disallowed May 13, 1966.

It is not disputed that the widow's share of the estate must be burdened with her share of the Kentucky inheritance taxes and there is no dispute but that the personal representative paid the entire inheritance tax due under the provisions of the Kentucky statute determining the amount and directing the payment by the personal representative. It is equally not in dispute that the federal estate tax upon the beneficiaries of the estate is to be determined by the state law. The case of Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L. Ed. 106, decided 1942, determined the impact of the burden of the estate tax upon the ultimate beneficiaries. Justice Murphy for the Supreme Court said:

"We are of opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax; accordingly Section 124 is not in conflict with the federal estate tax law. This conclusion is based upon the provisions of the Revenue Act of 1916, 39 Stat. 756, and subsequent acts, their legislative history and their administrative interpretation.

In the Act of 1916 Congress turned from the previous century's inheritance tax upon the receipt of property by survivors (see Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Scholey v. Rew, 23 Wall. 331, 23 L.Ed. 99) to an estate upon the transmission of a statutory 'net estate' by a decedent. That act directed payment by the executor in the first instance, Section 207, but provided also for payment in the event that he failed to pay, Section 208. It did not undertake in any manner to specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax. That Congress, from 1916 onward, has understood local law as governing the distribution of the estate after payment of the tax (with the limited exceptions created by Sec-

tion 826 (c) and (d) of the Internal Revenue Code, to be discussed presently) is confirmed by Section 812(d) of the Code, dealing with charitable deductions, which recognizes that estate taxes may be payable in whole or in part out of certain bequests, etc. 'by the law of the jurisdiction under which the estate is administered.' The administrative interpretation has been in accord, and that has been the understanding of the federal courts, and of some state courts."

The federal statute involved is Sec. 2056. Bequests, Etc., To Surviving Spouse. (b) Limitation in the Case of Life Estate or Other Terminable Interest.—(4) Valuation of interest passing to surviving spouse.—In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and—(26 U.S.C. § 2056, 1964 ed.)

The dispute in the case at bar hinges upon a proper determination of Kentucky law as to what portion of the federal estate tax, if any, should be borne by the widow. In the case of Lincoln Bank & Trust Co. v. Huber, 240 S.W.2d 89, the Kentucky Court of Appeals, Kentucky's court of last resort, discussed this question and the following are some of the clear and pivotal statements of that Court:

"It does appear * * * that under the provisions of Section 812, 26 U.S. C.A., the surviving spouse is entitled to deduct the statutory allotment before arriving at the net value of the estate for purposes of federal taxation."

The Court discusses the cases of Hampton's Adm'rs v. Hampton, 188 Ky. 199, 221 S.W. 496, 10 A.L.R. 515; Trimble v. Hatcher's Ex'rs, 295 Ky. 178, 173 S.W.2d 985, and Martin v. Martin's

Adm'r., 283 Ky. 513, 142 S.W.2d 164. In these cases it was concluded that, in the absence of specific direction to the contrary, justice required that all classes of beneficiaries participating in the net value of the estate left after the federal tax is satisfied and deducted should, as between themselves bear their just proportion of it. However, the Court noted that all of these cases were decided prior to 1948 when the statute was enacted giving to the surviving spouse a marital deduction and the Kentucky Court, concerning the effect of this change said:

"Its purpose is to allow a surviving spouse to take a certain portion of the estate *free of federal estate taxes.*" (Emphasis ours.)

"It appears to us that the apparent purpose behind the enactment of the U.S. Code above was to equalize the estate tax in non-community property states, with that of community property states, and to prepare the way for elimination from the tax burden all those whose legacies or allotments do not create or add to the tax."

"Under the authority of In re Peters above, we conclude that if the marital allotment is a deductible item before arriving at the net taxable estate, and since that item does not add to the tax, it can not be burdened with any portion of the federal estate tax. The surviving spouse, therefore, should receive her share undiminished by any federal estate tax."

We have not been cited to any case, nor have we found in a diligent search any case which has changed or modified the *Huber* decision. Therefore, the assertion that the marital deduction statute (26 U.S.C. Section 2056) places the marital deduction in the same category as a charitable deduction results in the conclusion that "just as a charitable bequest is free of federal estate taxes so is a widow's intestate share." In re Peters' Will, 204 Misc. 333, 88 N.Y.S.2d 142. After quoting from the *Peters* case the Kentucky Court of Appeals said that the apparent purpose behind the enactment of the marital deduction statute

was to equalize the estate tax in non-community property states with that in community property states, and concluded with the plain statement that the surviving spouse should receive her share undiminished by any federal estate tax. The *Huber* case was quoted with approval by the Circuit Court of Appeals of the Fourth Circuit, in Pitts v. Hamrick, 1955, 228 F.2d 486, in which opinion Judge Parker writing for the Court said:

> "It is inconceivable here that any part of the estate tax should be attributed to the share of the widow where the purpose of Congress in allowing the marital deduction was to free the interest of the surviving spouse from the burden of that tax and where the estate receives the benefit of the deduction because of that interest."

The facts in the case of Pitts v. Hamrick and the pertinent state statutes of the State of South Carolina are remarkably similar to those of Kentucky as referred to in the *Huber* case.

The following conclusions of law are made by the Court in this case:

### Conclusions of Law

1. This Court has jurisdiction of this action under 28 U.S.C.A. § 1346 (a) (1).

2. The federal law determines the amount of the federal estate tax, but the state law determines what part of the tax is to be charged to the respective beneficiaries. (Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106).

3. Under Kentucky law the marital deduction allowed to a surviving spouse is not to be charged with any federal estate tax. Lincoln Bank & Trust Co. v. Huber, Ky., 247 S.W.2d 89; In re Peters' Will, 204 Misc. 333, 88 N.Y.S.2d 142; Pitts v. Hamrick, C.A. 4, 228 F.2d 486.

4. Since the purpose of the enactment of the marital deduction statute was to equalize common law states with community property states, and there is no contention that the facts in the case at bar in a community property state would free the widow's share from the imposition of any federal estate tax, the Court concludes that the facts in the case at bar and the applicable law entitle the plaintiff to recover.

Judgment will be tendered by plaintiff's counsel, on notice to defendant's counsel, providing for the recovery sought in the complaint.