ESTATE of James A. WHIPPLE, Deceased, Mildred G. Whipple, Executrix, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 19199.

United States Court of Appeals
Sixth Circuit.

Dec. 11, 1969.

Carolyn R. Just, Department of Justice, Washington, D. C., Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Department of Justice, Washington, D. C., on brief; Ernest W. Rivers, U. S. Atty., Louisville, Ky., of counsel, for appellant.

J. Lane Peck, Paducah, Ky., Thomas J. Marshall, Wheeler & Marshall, Paducah, Ky., on brief, for appellee.

Before WEICK, CELEBREZZE and PECK, Circuit Judges.

WEICK, Circuit Judge.

The suit in the District Court was brought by the Estate of James A. Whipple for refund of federal estate taxes alleged to have been erroneously and illegally assessed and collected. The decedent Whipple died intestate on August 6, 1960, a resident of Kentucky. The only question for our determination is the calculation of the marital deduction under Section 2056(b) (4) (A) of the Internal Revenue Code of 1954.[1] In general, Sec-

1. 26 U.S.C. § 2056(b) (4) (A).

tion 2056 provides that for the purposes of determining the federal estate tax, the value of the taxable estate shall be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to the surviving spouse, provided that it shall not exceed fifty per cent of the value of the adjusted gross estate.

Decedent died intestate leaving a gross estate of $1,387,089.44 and an adjusted gross estate after debts and expenses of $1,310,413.52. The gross value of the property passing to the surviving spouse, Mildred G. Whipple, was $640,570.90.

In determining the value of the property passing to the surviving spouse for purposes of the marital deduction, Section 2056(b) (4) (A) provides:

"(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; * * *."

Both parties agree that to arrive at the net value allowable for the marital deduction, the gross value of the property passing to the widow must be reduced pursuant to Section 2056(b) (4) (A) by the amount of Kentucky inheritance tax levied on such property[2]. In the case of intestacy under Kentucky law each bene-

ficiary must bear his proportionate share of the state inheritance tax. Estate of Webber v. United States, 404 F.2d 411 (6th Cir. 1968); Louisville Trust Co. v. Walter, 306 Ky. 756, 207 S.W.2d 328 (1948); Trimble v. Hatcher's Ex'rs, 295 Ky. 178, 173 S.W.2d 985 (1943), cert. denied, Trimble v. Justice, 321 U.S. 747, 64 S.Ct. 611, 88 L.Ed. 1049; Martin v. Martin's Adm'r, 283 Ky. 513, 142 S.W.2d 164 (1940); Hampton's Adm'rs v. Hampton, 188 Ky. 199, 221 S.W. 496, 10 A.L.R. 515 (1920).

Taxpayer computed the Kentucky inheritance tax on the property passing to the surviving spouse at $26,055.68[3] and deducted this amount from the gross value of $640,570.90 to arrive at an allowable marital deduction of $614,515.22. The Government argues that the effect of reducing the net amount available to the spouse decreases the marital deduction and thereby increases the estate tax by increasing the amount of the net estate. The Government therefore contends that the marital deduction should be further reduced in the amount of $9,299.94 in order to reflect the surviving spouse's proportionate share of the increase in federal estate tax occasioned by the deduction of the state inheritance tax. The allowable marital deduction was computed as $603,796.65, which increased the taxable estate and the ultimate federal estate tax.[4] A federal es-

2. The regulation (26 C.F.R. § 20.2056(b)–4(c) (2)) provides:
   "For example, assume that the only bequest to surviving spouse is $100,000 and the spouse is required to pay a State inheritance tax in the amount of $1,500. If no other death taxes affect the net value of the bequest, the value, for the purpose of the marital deduction, is $98,500."

3. The Government computed the Kentucky inheritance tax to be $27,474.31 on the theory that there was no proof that the estate was given a 5% discount; however, the exact amount of the Kentucky inheritance tax is not presented in this appeal.

4. The federal estate tax charged to the widow was described by the Govern-

ment's tax expert as being "attributable to the estate tax on the inheritance tax." He further testified:
   " * * * [I]f there were no Kentucky inheritance tax charged to the widow, there would be no federal estate tax attributable to this and charged to the widow. But since there is a Kentucky inheritance tax, that is charged to the widow, which reduces the marital deduction. This generates a federal estate tax which in turn is a nondeductible interest. It is a taxable interest. And that taxable interest generates further estate tax, federal estate tax, which *again reduces the marital deduction,* increases the taxable estate, generates an additional federal estate tax, and this process is continued until you arrive at zero, no change." (App. 28b)

tate tax in the amount of $3,266.43 resulted from using $603,796.65 as the marital deduction instead of $614,515.22. It is contested by the taxpayer.

The District Court held for the taxpayer on the grounds that state law determines what part of the federal estate tax is to be charged to the respective beneficiaries, and that under Kentucky law the marital deduction allowed to a surviving spouse is not to be charged with any federal estate tax.[5] The Government appealed.

We affirm.

The Government concedes that under Kentucky law no part of the federal estate tax is chargeable to the widow by reason of the marital deduction, but contends that since the amount of the state inheritance tax which reduced the value of the property passing to her does not qualify for the marital deduction, it has the effect of increasing the value of the taxable estate, and the value of the property allotted to the widow should be reduced by a proportionate part of the federal estate tax attributable to the portion of the property which was used to pay the Kentucky inheritance tax on her share of the estate. The basis of the Government's contention is that state law is irrelevant except insofar as it imposes a state inheritance tax on the widow's property.

An analysis of the basic problem of the apportionment of the estate tax burden may be beneficial in understanding the problem presented. The federal estate tax is a tax upon the privilege of transmitting property, and not a tax upon the receipt of property. If a decedent died testate, courts in many early cases determined that the federal estate taxes were intended to be a general charge on the residuary estate.[6] YMCA v. Davis, 106 Ohio St. 366, 140 N.E. 114 (1922), aff'd, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924).

Some courts reached a contrary result, either by statute or equitable principles, by applying the doctrine of apportionment, which required that the beneficiaries should share the estate tax burden. Hampton's Adm'rs v. Hampton, 188 Ky. 199, 221 S.W. 496, 10 A.L.R. 515 (1920). New York enacted an apportionment statute which was declared unconstitutional by the New York Court of Appeals on the ground that the federal estate tax laws required that the tax be borne by the residue of the estate, and that the New York law contravened the federal law.[7] On appeal, the Supreme Court in Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942), reversed. In upholding the constitutionality of New York's apportionment statute, the Supreme Court held that the determination of who should ultimately bear the federal estate tax burden is to be made according to state rather than federal law, and that the state may apportion the federal estate tax as it sees fit among the beneficiaries of the estate.

The effect of adopting an apportionment doctrine is to decrease the share of the estate which a beneficiary would receive by the allocated federal estate tax instead of the residuary bearing the full impact of the tax. The federal estate

---

The figure of $603,796.65 for the marital deduction, was obtained by a series of ten different trial computations. See Dodd v. United States, 345 F.2d 715, 717 (3d Cir. 1965) and cases cited therein which discuss methods of calculation.

5. 286 F.Supp. 674 (1968).

6. In the cases of intestacy, the apportionment doctrine was applied, requiring the

burden of federal estate taxation to be shared equally by all the beneficiaries since there was no reason why any part of the property should be freed from paying its fair share of the federal estate taxes.

7. In re Del Drago's Estate, 287 N.Y. 61, 38 N.E.2d 131 (1941).

tax due remains constant and only the one who bears the tax has changed [8].

In 1948 Congress enacted the statute providing for the marital deduction in order to equalize the estate tax in non-community property states with that in community property states. Pitts v. Hamrick, 228 F.2d 486, 490 (4th Cir. 1955). Since the marital deduction is a deduction from the taxable estate, it does not generate any federal estate tax.

▮ The question arose whether the marital share which would otherwise qualify for the marital deduction was to bear any part of the estate tax. Section 2056(b) (4) (A) requires a reduction for the effect of any estate taxes; however, the question whether estate taxes are to reduce the marital share is controlled by state law. Riggs v. Del Drago, *supra*; Reg. § 20.2056(b)–4(c) (4).

In the past the Government has contended that the marital deduction should be decreased by the amount of the federal estate tax which is attributable to the widow's share of the estate. Under this theory the total federal estate tax attributable to the net taxable estate, instead of merely a proportionate share of the federal estate tax attributable to the state inheritance tax which is asserted here, would be proportionately deducted in computing the allowable marital deduction. If this contention prevailed, the effect of it would be more than merely a shift of the burden of who bears the estate tax, since reducing the marital share by the attributable estate tax will reduce the marital deduction, thus increasing the net taxable estate and the ultimate estate tax.[9]

---

**8.** Scoles, Apportionment of Federal Estate Taxes and Conflicts of Laws, 55 Colum.L.Rev. 261 (1955):

1. For the purposes of illustration assume that the deceased had an estate of $250,000 from which a tax of $50,000 was to be paid. By his will, the testator bequeathed $100,000 to A, $50,000 to B, $25,000 to C, and the residue to D. The comparative distribution is as follows:

Under the common law rules:

| Legatee | Legacy | Tax deducted | Balance received |
|---|---|---|---|
| A | $100,000 | —0— | $100,000 |
| B | 50,000 | —0— | 50,000 |
| C | 25,000 | —0— | 25,000 |
| D (Residue) | 75,000 | $50,000 | 25,000 |
| Totals | $250,000 | $50,000 | $200,000 |

Under an apportionment rule:

| Legatee | Legacy | Tax deducted | Balance received |
|---|---|---|---|
| A | $100,000 | $20,000 | $ 80,000 |
| B | 50,000 | 10,000 | 40,000 |
| C | 25,000 | 5,000 | 20,000 |
| D (Residue) | 75,000 | 15,000 | 60,000 |
| Totals | $250,000 | $50,000 | $200,000 |

Apportionment would thus mean $35,000 to D, the residuary legatee.

---

**9.** Kahn, The Federal Estate Tax Burden Borne By A Dissenting Widow, 64 Mich. L.Rev. 1499, 1500–1501 (1964) gives the following example:

A dies leaving a gross estate of $1,200,000. A's will placed all the property in trust to widow for life with the right to the income, then corpus to son. There was administrative and funeral expenses totalling $200,000 so that the adjusted gross estate is $1,000,000. The executor

elected to treat only $140,000 as an administrative expense under 642(g). Since the trust corpus does not qualify for the marital deduction, the taxable estate is $1,000,000 ($1,200,000 minus $140,000 expenses and $60,000 exemption) and the estate tax is $325,700. Assume the widow renounces the will and takes her statutory one-half share of the net estate. If the widow's share is computed before deducting estate taxes, she will re-

The federal courts, interpreting state law, have rejected the contention of the Government that the marital deduction should be reduced by the amount of the federal estate taxes. Dodd v. United States, 345 F.2d 715 (3d Cir. 1965); Pitts v. Hamrick, *supra*; First Nat'l Bank of Topeka v. United States, 233 F.Supp. 19 (D.Kan.1964); Weyenberg v. United States, 135 F.Supp. 299 (E.D. Wis.1955). *But see* Thompson v. Wiseman, 233 F.2d 734 (10th Cir. 1956).

Kentucky does not have an apportionment statute but follows the doctrine of equitable apportionment of federal estate taxes. Estate of Webber v. United States, *supra*; Louisville Trust Co. v. Walter, *supra*; Trimble v. Hatcher's Ex'rs, *supra*; Martin v. Martin's Adm'r, *supra*; Hampton's Admr's v. Hampton, *supra*. The only Kentucky case cited which deals with the question of whether federal estate taxes should be attributable to the marital deduction is Lincoln Bank & Trust Co. v. Huber, 240 S.W.2d 89 (1951). The Kentucky Court of Appeals there held in a declaratory judgment action that the widow's statutory one-half interest in personalty was not to be diminished by any federal estate tax.[10] The Court reasoned that the marital deduction was enacted in 1948 for geographical equalization, stating:

"[3] It appears to us that the apparent purpose behind the enactment of the U. S. Code above was to equalize the estate tax in non-community property states, with that of community property states, and to prepare the

way for elimination from the tax burden all those whose legacies or allotments do not create or add to the tax." *Id.* at 91.

The Government argues that Section 2056(b) (4) (A) requires that the *effect* of the Kentucky inheritance tax, which reduced the widow's share in computing the marital deduction, and the federal estate tax arising therefrom on the net value of the surviving spouse's interest, must be taken into account in determining the value of such interest for marital deduction purposes; that a Riggs v. Del Drago problem is not presented; that Kentucky law has no bearing on the case except to the extent that the state imposes an inheritance tax on the widow's share. This is a novel approach which so far as we can ascertain has never been directly asserted at the appellate level.

The only case which has come to our attention which deals with the issue of whether the marital share should be reduced not only for the direct effect of the state inheritance tax on the spouse's share, but also for its more indirect effect on the federal estate tax through the increase in the net taxable estate, is Provident Trust Co. v. United States, 58–2 U.S. Tax Cas., ¶ 11,815, page 69,881 (E.D.Pa., 1958), affirmed on other grounds, 268 F.2d 779 (3d Cir. 1959). The Orphans' Court had determined that the surviving spouse's interest was burdened by state inheritance tax, but was not subject to any payment of, or deduction for, any portion of the federal estate tax assessed upon the estate. The Gov-

---

ceive $500,000, all of which is deductible by the estate; the taxable estate will be $500,000; the estate tax will be $145,-700; the son will receive $354,300. However, if the widow's share is computed after deducting the federal estate taxes, the computations become interdependent since the amount of the estate tax depends upon the size of the widow's share, and the size of her share is also determined by the amount of tax that is due. The final result is that the widow's share is $411,698 (instead of $500,000); the estate tax is $176,605 (instead of $145,-700); and the son receives $411,697 (instead of $354,300).

10. To the same effect is Miller v. Hammond, 156 Ohio St. 475, 104 N.E.2d 9 (1952); however, *Miller* was overruled in Campbell v. Lloyd, 162 Ohio St. 203, 122 N.E.2d 695 (1954). The court, in overruling *Miller*, was influenced by the language of the Ohio statute which provided that if the widow elected to take under the statute of descent and distribution rather than under the will, she "shall take not to exceed one-half of the net estate." The court held that "net estate" is what remained after deduction of debts and obligations of the decedent and the estate, including federal estate taxes.

ernment made the same contention there which is asserted here, *i. e.,* that there should be a further reduction of the marital deduction in order to reflect the increase in federal estate tax occasioned by the deduction of such state inheritance tax. The District Court rejected the argument that state law is irrelevant except to impose an inheritance tax on the widow's share, citing *Riggs* for the proposition that the ultimate impact of the tax is determined by state law, and held that the Orphans' Court had already determined that the only effect which any tax had on the widow's share was that of the state inheritance tax. The Court reasoned:

> "Were we to apply § 812(e) (1) (A), (E) (i),[11] as interpreted by defendant, the 1939 Code would have determined where the ultimate impact of a portion of the tax should fall, and the Court's adjudication in conflict with the result of such application would have to give way. In our opinion this Court may not so interpret and apply the section to the surviving spouse's share in this action. In certain areas the Code made the amount of the tax dependent upon local law. The marital deduction was one of those areas." (Footnotes omitted.) *Id.* at 69,888.

We are in agreement with the holding that the ultimate impact is determined by state law. Regulation § 20.-2056(b)–4(c) (2), stated in footnote 2 of this opinion, impliedly supports this construction. There is no mention therein that the federal estate taxes generated by the reduction due to the $1,500 state inheritance tax should further reduce the value of the property passing to the widow for the purpose of the marital deduction. Therefore, Kentucky law is determinative of the issue.

The only Kentucky case on the subject is *Huber, supra,* and we are bound by its holding. *Huber* relied entirely on the authority of In re Peters' Will, 204 Misc. 333, 88 N.Y.S.2d 142, which held

that the widow's share would be burdened only with a portion of the state estate tax but not a portion of the federal estate tax.

We hold that the ultimate burden of federal estate tax payment is determined by state law, and under Kentucky law the estate tax is not a burden upon the surviving spouse's share in the intestate's estate. Therefore, the surviving spouse is entitled to receive the benefit of the marital deduction, undiminished by any part of the federal estate tax.

Affirmed.

---

11. Presently Section 2056(a), (b) (4) (A) without any significant change in statutory language.